## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UMDNJ-UNIVERSITY HOSPITAL, ) | |
| ) | |
| Plaintiff , ) | |
| ) | |
| v. ) | Case No. 1:06CV01200 (EGS) |
| ) | |
| MICHAEL O. LEAVITT, Secretary ) | |
| of the United States Department ) | |
| of Health and Human Services, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

## DEFENDANT'S MOTION TO DISMISS AND FOR SUMMARY JUDGMENT

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 56(b), Defendant

Michael O. Leavitt, the Secretary of Health and Human Services, by and through his

undersigned counsel, respectfully moves this Court for summary judgment with respect to

Plaintiff's allegations concerning the 2000, 2001, and 2003 cost years on the grounds that

there are no material facts in dispute and that Defendant is entitled to judgment as a

matter of law; and moves this Court to dismiss for lack of subject matter jurisdiction all

Plaintiff's claims for the 1999 and 2002 cost years, or, even if the Court were to find

subject matter jurisdiction, moves this court for summary judgment with respect to those

cost years also.

Alternatively, with respect to those fiscal years over which this Court has subject-

matter jurisdiction, Defendant moves the Court to remand this matter to the Secretary for

further factual development on the issue of whether it would have been futile for UMDNJ

to claim the costs at issue on its cost reports.

In support of the instant motions, the Court is respectfully referred to the

accompanying Memorandum in Support of Defendant's Motion to Dismiss and for

Summary Judgment and in Opposition to Plaintiff's Motion for Summary Judgment, and

the attached Statement of Material Facts As To Which There Is No Genuine Issue.  A

proposed order is also attached.

July 6, 2007                              Respectfully submitted,


                                    _____/s/_____
                                    JEFFREY A. TAYLOR
                                    United States Attorney
                                    D.C. Bar No. 498610


                                    _____/s/_____
                                    MEGAN L. ROSE
                                    Assistant United States Attorney
                                    N.C. Bar No. 28639
                                    Civil Division
                                    555 Fourth Street, N.W.
                                    Washington, D.C. 20530
                                    (202) 514-7220
                                    Facsimile: (202) 514-8780

_____

_____/s/_____

SUSAN MAXSON LYONS

D.C. Bar No. 434249

Attorney

U.S. Department of Health and
    Human Services

Office of the General Counsel

Room 5309 Cohen Building

330 Independence Ave., S.W.

Washington, D.C. 20201

(202) 619-3802

Facsimile: (202) 401-1405

Counsel for Defendant

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UMDNJ-UNIVERSITY HOSPITAL, ) | |
| ) | |
| Plaintiff , ) | |
| ) | |
| v. ) | Case No. 1:06CV01200 (EGS) |
| ) | |
| MICHAEL O. LEAVITT, Secretary ) | |
| of the United States Department ) | |
| of Health and Human Services, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AND FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

Plaintiff UMDNJ-University Hospital ("Plaintiff" or "UMDNJ"), a provider of hospital services located in Newark, New Jersey, seeks judicial review of final decisions of the Secretary of Health and Human Services ("Secretary") denying jurisdiction over Plaintiff's appeals of its Medicare reimbursement pertaining to the costs of UMDNJ's "clinical medical education programs" for its 2000, 2001, 2002, and 2003 fiscal years. The Provider Reimbursement Review Board ("PRRB" or "Board") found that Plaintiff was not "dissatisfied" with a final reimbursement determination of the Medicare fiscal intermediary, see 42 U.S.C. § 1395oo(a)(1)(A)(i), inasmuch as the hospital did not include an appropriate reimbursement claim on the cost report submitted to the intermediary. Plaintiff also claims that the Board reached a similar decision with respect to its 1999 cost year.

As established below, the Board's final decisions rest on a permissible construction of the Medicare statute and regulations that is well-supported by judicial precedent. Thus, under the governing criteria for judicial review, the Board's decisions should be sustained as not arbitrary, capricious, an abuse of discretion, or unsupported by substantial evidence in the administrative record.

Moreover, because the Board did not render a decision at all with respect to Plaintiff's appeal of its 1999 cost year, let alone a final agency decision, this Court lacks subject matter jurisdiction over the appeal for that year. The Court also lacks subject matter jurisdiction over Plaintiff's appeal of its 2002 cost year, as Plaintiff failed to seek review of it in this Court within 60 days as required by 42 U.S.C. § 1395oo(f)(1).

## STATUTORY AND REGULATORY BACKGROUND

### I.    MEDICARE PROVIDER REIMBURSEMENT AND APPEALS

The Medicare statute, 42 U.S.C. § 1395 et seq., sets forth a federal health insurance program for the elderly and disabled. A hospital participates in Medicare under a "provider agreement" with the Secretary. 42 U.S.C. § 1395cc.

A provider must file a cost report annually with the Secretary's agent, the fiscal intermediary. 42 C.F.R. §§ 413.20(b), 413.24(f). After auditing the cost report, the intermediary issues a final determination of the total amount of reimbursement owing in an initial notice of program reimbursement ("NPR"). 42 C.F.R. §§ 405.1803, 413.60, 413.64(f). If a provider is "dissatisfied" with the program reimbursement in the initial NPR, it may obtain a hearing before the PRRB if at least $10,000 is at issue, and the

hearing is requested within 180 days of the NPR.  42 U.S.C. § 1395oo(a).  The provider must "identify the aspects of the determination with which the provider is dissatisfied, [and] explain why the provider believes the determination is incorrect in such particulars . . . ."  42 C.F.R. § 1841(a)(1).

If the Board has jurisdiction and the authority to decide the issues, see 42 C.F.R. § 405.1867, it holds a hearing and issues a decision.  The decision of the PRRB is final unless the Secretary's delegate, the Administrator of the Centers for Medicare & Medicaid Services ("CMS") (formerly known as the Health Care Financing Administration ("HCFA")), reverses, affirms, or modifies it within 60 days from the provider's receipt of the decision.  42 U.S.C. § 1395oo(f)(1); 42 C.F.R. §§ 405.1875(a), 405.1877(a).  If the Administrator declines review, the Board decision is the final decision and the provider must file a civil action within 60 days from receipt of the Board's decision.  42 U.S.C. § 1395oo(f)(1).

Apart from the statutory appeals process are the Secretary's regulations governing administrative finality and reopening.  See 42 C.F.R. § 405.1807(c).  The intermediary "may" reopen specific "findings on matters at issue" within three years of the NPR.  42 C.F.R. § 405.1885(a).  A provider may appeal to the Board any "separate and distinct determination," or revised NPR, that results from a reopening.  42 C.F.R. § 405.1889.

II.    PAYMENT FOR NURSING AND ALLIED HEALTH EDUCATION

Before 1983, Medicare reimbursed providers of health care services by paying their "reasonable costs" of covered services.  42 U.S.C. §§ 1395f(b)(1), 1395x(v)(1)(A).

-3-

This was changed in 1983, when Congress enacted a Medicare reimbursement program known as the Prospective Payment System ("PPS").  See Social Security Amendments of 1983, Pub. L. No. 98-21 (1983); County of Los Angeles v. Shalala, 192 F.3d 1005, 1008 (D.C. Cir. 1999), cert. denied, 530 U.S. 1204 (2000).  Under the PPS, Medicare pays hospitals for their inpatient operating costs on the basis of prospectively determined flat rates, set according to historic regional costs and patients' diagnoses, rather than on a reasonable-cost basis.  See Social Security Amendments of 1983, Pub. L. No. 98-21, § 601, 97 Stat. 65, 149 (1983), codified as amended at 42 U.S.C. § 1395ww;  County of Los Angeles, 192 F.3d at 1008.  This promotes efficiency because the hospital is responsible for costs in excess of the flat rates and retains excess funds when its costs are lower.

Medicare has historically reimbursed providers for the Medicare program's share of costs associated with approved educational activities, including approved nursing and allied health (paramedical) education programs operated by the provider.  See 66 Fed. Reg. 3358 (Jan. 12, 2001).  In the amendments that established the PPS, Congress excluded from PPS the costs of "approved educational activities."  Thus, these costs were not included in the PPS payment rates, 42 U.S.C. §§ 1395ww(a)(4) and 1395ww(d)(1)(A), and instead Medicare payments for approved educational activities operated directly by the hospital were deemed to be costs that "pass through" PPS and continue to be made on a reasonable cost basis.  42 U.S.C. § 1395f(b).

Under the Secretary's regulations, payment will be made to the provider on a reasonable cost basis (meaning in addition to the PPS payment) where the cost is an approved educational activity.   An approved educational activity is one that is operated by a provider, enhances the quality of patient care at the provider, and meets State licensure or national accreditation standards.  42 C.F.R. § 413.85(c).  See also 49 Fed. Reg. 234, 267 (Jan. 3, 1984); 42 C.F.R. § 405.421(d)(7) (1984); 42 C.F.R. § 413.85(d).[1] The various requirements for an educational program to be "directly operated" by a provider are set out at 42 C.F.R. § 413.85(f).  A provider's total allowable educational costs do not include, among other things, "costs that constitute a redistribution of costs from an educational institution to a provider or costs that have been or are currently being provided through community support."  42 C.F.R. § 413.85(d)(2)(ii).  In compliance with OBRA 90, the rule also set forth when reasonable cost payment for the clinical training costs of certain nonprovider-operated programs will be allowed.  See 42 C.F.R. § 413.85(g)(2).

---

[1]The Secretary published a final rule addressing payment for nursing and allied health education on January 12, 2001.  66 Fed. Reg. 3358 et seq.  This rule was expressly intended only to "clarify" the previous regulation, codify provisions of the Provider Reimbursement Manual, and comply with requirements Congress had set forth in Omnibus Budget Reconciliation Act of 1989, Pub. L. No. 101-239 ("OBRA 89") and Omnibus Budget Reconciliation Act of 1990, Pub. L. No. 101-508 ("OBRA 90").  See 57 Fed. Reg. 43,659 (Sept. 22, 1992); 66 Fed. Reg. at 3361.  Because the 2001 regulation was expressly a clarification or codification of pre-existing policy, that version of the regulation is relevant for purposes of analysis with respect to all of Plaintiff's cost years.

## STATEMENT OF FACTS

A.     ADMINISTRATIVE PROCEEDINGS

1.  Plaintiff UMDNJ-University Hospital, a provider of Medicare services, operates an inpatient hospital in Newark, New Jersey.  (Amended Complaint at ¶6; Defendant's Answer to Amended Complaint at ¶6.)  On September 17, 2001, the fiscal intermediary issued the NPR for the hospital's fiscal year ending June 30, 1999 ("FY 1999").  (Certified Supplemental Administrative Record ("SAR") 599-939.)   On March 15, 2002, the provider appealed five issues to the PRRB, none of which related to payment for clinical medical education programs.  (See SAR 546-52.)  In a letter dated December 4, 2002, the PRRB requested that the parties submit jurisdictional briefs on some of the issues raised in the appeal (SAR 514–16) but, again, because UMDNJ had not appealed the issue of payment for clinical medical education programs, the Board did not consider that issue in its request for jurisdictional briefs.  Over the course of the next three and a half years, issues were withdrawn and added (see, e.g., SAR 505-12), but UMDNJ never raised the issue of whether it should have been paid for costs associated with clinical medical education programs.  (See SAR 11-20 (text of intermediary's hearing brief); 82-90 (text of provider's hearing brief).)  On August 8, 2006, the fiscal intermediary and UMDNJ entered into an Administrative Resolution (SAR 2-9), and on August 10, 2006, the PRRB granted UMDNJ's request for withdrawal of the appeal.  (SAR 1.)

2.  UMDNJ did not claim costs related to clinical medical education programs on its cost report for its fiscal year ending June 30, 2000 ("FY 2000").  (Amended Complaint at ¶16; Defendant's Answer to Amended Complaint at ¶16.)  On June 12, 2002, the fiscal intermediary issued the NPR for the hospital's FY 2000.  (Certified Administrative Record ("AR") 622-796.)  On December 6, 2002, the provider appealed ten issues to the PRRB, none of which related to payment for clinical medical education programs.  (AR 615-20.)

By letter dated February 23, 2006, almost four years after the initial NPR and after the date for the Board hearing had been set, UMDNJ sought to add the following issue to its Board appeal: "Whether the Intermediary incorrectly excluded costs related to the School of Nursing, School of Health Related Professions, and School of Biomedical Sciences from the Provider's cost report."  (AR 65.)  Plaintiff did not provide an estimate of the reimbursement effect of the alleged exclusion of these costs by the fiscal intermediary.

The fiscal intermediary contested the PRRB's jurisdiction over this issue, and Plaintiff filed a brief in opposition to the intermediary's challenge.  (AR 5-11, 12-64.)  By letter dated May 2, 2006, the Board denied jurisdiction over what it called the clinical

medical education programs issue.  (AR 2-3.)[2]  Subsequently, the parties settled the

remaining issues in the appeal.  (AR 1.)

    3.  A similar chain of events occurred for Plaintiff's fiscal year ending June 30,

2001 ("FY 2001").  UMDNJ again failed to claim costs related to clinical medical

education programs.  (Amended Complaint at ¶18; Defendant's Answer to Amended

Complaint at ¶18.)  On September 29, 2003, the fiscal intermediary issued the NPR for

the hospital's FY 2001.  (See AR 817-819 (NPR cover letter).)  By letter dated March 23,

2004, the provider appealed six issues to the PRRB, none of which related to payment for

clinical medical education programs.   (AR 868-75.)

    By letter dated August 25, 2005, UMDNJ sought to add the same issue to its FY

2001 Board appeal that it added to the Board appeal for its FY 2000 - namely, "[w]hether

the Intermediary incorrectly excluded costs related to the School of Nursing, School of

Health Related Professions, and School of Biomedical Sciences from the Provider's cost

report."  (AR 866.)  Plaintiff did not provide an estimate of the reimbursement effect of

the alleged exclusion of these costs.

    The fiscal intermediary contested the PRRB's jurisdiction over this issue, and on

May 2, 2006, the Board denied jurisdiction over it.  (See AR 801-63.)  The remaining

---

    [2]Since both the PRRB and the Plaintiff have adopted this terminology, this brief
will refer to the reimbursement matter at issue before the PRRB as the "clinical medical
education programs" issue.

issues in the appeal were later resolved and the appeal withdrawn. (<u>See</u> Second Supplemental Administrative Record ("SSAR") 8.)

4.  The facts for Plaintiff's FY 2002 and FY 2003 are similar, except in those cases the Plaintiff included the issue of payment for its clinical medical education programs in its initial appeals to the PRRB. (<u>See</u> SAR 1002-1187 (provider's January 3, 2005, request for hearing with respect to FY 2002, with July 9, 2004, NPR and other documentation attached); 949-1001 (intermediary's jurisdictional challenge); 942-48 (Plaintiff's response); 940-41 (PRRB decision dated June 5, 2006, denying jurisdiction); 1297-1477 (provider's March 30, 2006, request for hearing with respect to FY 2003, with October 20, 2005, NPR and other documentation attached); 1238-96 (intermediary's jurisdictional challenge); 1232-37 (Plaintiff's response); 1188-89 (PRRB decision dated December 4, 2006, denying jurisdiction).) Although other issues were still pending before the Board for those years when Plaintiff filed its Amended Complaint in this matter, the appeal for FY 2002 has since been withdrawn with respect to the other reimbursement issues. (<u>See</u> Docket No. 18, Errata to Notice of Filing (filed March 15, 2007) (noting that remaining issues are still pending before the PRRB for 2002 and 2003 fiscal years); SSAR 16.)

B.    <u>DISTRICT COURT PROCEEDINGS</u>

Plaintiff filed its initial complaint against the Secretary on June 30, 2006 (Docket No. 1), and its Amended Complaint ("Complaint") on February 7, 2007 (Docket No. 13). The original complaint requested a remand requiring the PRRB to exercise jurisdiction over the 2000 and 2001 cost years, while the amended complaint added a similar request

-9-

with respect to the 1999, 2002, and 2003 cost years.  (<u>Compare</u> Complaint Prayer for

Relief (1)(a) (referring to 2001 and 2001 cost years) <u>with</u> Amended Complaint Prayer for

Relief (1)(a) (referring to "all of the cost report years referenced in the Complaint").)  The

Amended Complaint alleges that "the Secretary's policy precludes reimbursement to the

Hospital for the cost of Clinical Medical Education Programs," and notes that the hospital

"has not, for any cost report year, been reimbursed by Medicare for the costs associated

with the Clinical Medical Education Programs."  (Amended Complaint at ¶25.)  The

Amended Complaint does not address why UMDNJ did not claim reimbursement for

these costs in the cost reports at issue here; what policy allegedly precluded payment for

the costs; or even whether Plaintiff had requested reimbursement for these costs for any

other cost year.

## **ARGUMENT**

I.    THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER
             PLAINTIFF'S FY 1999 AND FY 2002 CLAIMS.

1.  Under the Medicare statute, only final decisions by the Secretary are subject to

judicial review.  42 U.S.C. § 1395oo(f)(1).  <u>See also</u> <u>Heckler v. Ringer</u>, 466 U.S. 602, 605

("Judicial review of claims arising under the Medicare Act is available only after the

Secretary renders a 'final decision' on the claim, in the same manner as is provided in 42

U.S.C. § 405(g) . . . ."); <u>Salfi</u>, 422 U.S. at 764 ("[T]he statute empowers district courts to

review a particular type of decision by the Secretary, that type being those which are

'final' and 'made after a hearing.'"); <u>National Kidney Patients Ass'n v. Sullivan</u>, 958

-10-

F.2d 1127, 1130 (D.C. Cir. 1992); Westchester Mgmt. Corp. v. United States Dep't of Health and Human Servs., 948 F.2d 279, 281 (6th Cir. 1991). It bears emphasizing that the "final decision" requirement in 42 U.S.C. § 1395oo(f)(1) is a "statutorily specified jurisdictional prerequisite," not "simply a codification of the judicially developed doctrine of exhaustion." Salfi, 422 U.S. at 766. Similarly, the requirement in 42 U.S.C. § 1395oo(f)(1) that a provider appeal to federal district court within 60 days of receiving a final agency decision is also jurisdictional. Kidney Ctr. of Hollywood v. Shalala, 63 F.Supp.2d 51, 55 (D.D.C. 1999).

The Board's decision that it does not have jurisdiction is a final decision, which this district court may review pursuant to 42 U.S.C. § 1395oo(f)(1). Saline Cmty. Hosp. Ass'n v. Secretary, HHS, 744 F.2d 517, 520 (6th Cir. 1984). The scope of the court's review, however, can "not extend beyond the Board's conclusion that it lack[s] jurisdiction." Id. The court can rule "only on whether the Board's jurisdictional decision was correct." Id. If the court finds that the Board's decision was incorrect, the case must be remanded to the Secretary for further proceedings not inconsistent with the court's actions, including consideration of the Board's jurisdiction. See Bethesda Hosp. Ass'n v. Bowen, 485 U.S. 399, 402 (1988) ("We are not concerned here with the merits . . . ; rather, we must decide whether the Board had jurisdiction to consider the issue"). See also HCA Health Servs. of Okla. v. Shalala, 27 F.3d 614, 615-17 (D.C. Cir. 1994); Tucson Med. Center v. Heckler, 611 F. Supp. 823, 827 (D.D.C. 1985); Good Samaritan Hosp. Regional Med. Ctr. v. Shalala, 85 F.3d 1057, 1062 (2d Cir. 1996). This limitation

-11-

on the district court's jurisdiction is consistent with the fact that, where there has been a

final denial of jurisdiction over an administrative appeal, there is no final agency decision

on the merits of the underlying reimbursement dispute.  It is also consistent with the

Supreme Court's recognition that "all aspects" of a claim must be "channeled" through

the administrative process.  See Shalala v. Illinois Council on Long Term Care, 529 U.S.

1, 12 (2000) (quoting Heckler v. Ringer, 466 U.S. 602, 614 (1984)).

2.  As detailed above, the Supplemental Administrative Record reveals that

UMDNJ did not appeal a clinical medical education programs issue to the Board for FY

1999, either initially or while the Board appeal was proceeding.  The Board thus never

considered the issue.  Moreover, the issues that were appealed to the Board were

ultimately withdrawn.  (See SAR 1 (letter dated August 10, 2006, granting Provider's

Request for Withdrawal of Appeal), 2-9 (Administrative Resolution dated August 8,

2006).)  There is absolutely nothing for this Court to review.  There is no final agency

decision for the 1999 cost year, and this Court lacks subject matter jurisdiction to consider

whether the Board would have had jurisdiction over the clinical medical education

programs issue had Plaintiff raised it and had the PRRB addressed it.  Accordingly, this

Court should dismiss all of Plaintiff's claims relating to its 1999 fiscal year for lack of

subject matter jurisdiction.

3.  This Court also lacks jurisdiction over UMDNJ's claims relating to its 2002

fiscal year, as UMDNJ failed to file civil litigation with respect to FY 2002 until more

than 60 days after it received the PRRB's decision.  Under 42 U.S.C.§ 1395oo(f)(1),

-12-

providers "have the right to obtain judicial review of any final decision of the Board . . .

by a civil action commenced within 60 days of the date on which notice of any final

decision by the Secretary is received." This is a mandatory requirement. See 42 C.F.R.

§ 405.1877(b) ("If the Administrator declines to review a Board decision, the provider

must file its appeal within 60 days of receipt of the decision of the Board.").

The 60-day filing requirement in 42 U.S.C. § 1395oo(f)(1) is a jurisdictional

requirement. Kidney Center of Hollywood v. Shalala, 63 F. Supp.2d 51, 55-56 (D.D.C

1999). It is not a statute of limitations that may be waived if not asserted, and there is no

statutory ground for extending the 60-day time limit.[3]  The Medicare Act at 42 U.S.C.

§ 1395ii incorporates 42 U.S.C. § § 405(g)(h), which makes the provisions of Section

1395oo(f) the exclusive provision for review of final reimbursement decisions. Shalala v.

Illinois Council on Long Term Care, Inc., 529 U.S. 1, 5 (1999). As such, the statute is

clear that UMDNJ was required to file a civil action within 60 days of receipt of the

PRRB's decision for FY 2002.

UMDNJ filed its original complaint in this case within 60 days of the Board's June

5, 2006, decision regarding the 2002 cost year, but the complaint failed to seek relief with

respect to the FY 2002 appeal. Plaintiff did not amend its complaint to include the FY

2002 appeal until February 7, 2007, well beyond the 60-day time period provided for in

---

[3]Compare 42 U.S.C. § 405(g) which states that an action must be filed within sixty
days or "within such further time as the Commissioner of Social Security may allow."
This provision is not incorporated into the PRRB provisions by 42 U.S.C. § 1395ii.

42 U.S.C. § 1395oo(f)(1) for filing civil litigation.  Accordingly, because Plaintiff's

February 7, 2007 Amended Complaint was not filed within 60 days of when it received

the PRRB's decision on its FY 2002 appeal, this Court lacks jurisdiction over Plaintiff's

claims relating to FY 2002.

> II.   THE PRRB'S FINAL JURISDICTIONAL DISMISSALS OF
> PLAINTIFF'S APPEAL OF ITS OWN COST REPORT
> TREATMENT OF ITS CLINICAL MEDICAL EDUCATION
> PROGRAMS SHOULD BE SUSTAINED.
>
> A.   A Narrow Standard of Review Governs This Action, and the
> Board's Final Decision Is Entitled to Substantial Deference.

The Medicare statute, 42 U.S.C. § 1395oo(f)(1), provides for judicial review in

accordance with the Administrative Procedure Act, 5 U.S.C. § 701 et seq. ("APA").

Under the APA, 5 U.S.C. § 706(2)(A), (E), a final agency action may be set aside only if

it is "arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, or

otherwise not in accordance with the law."  Sentara-Hampton General Hosp. v. Sullivan,

980 F.2d 749, 755 (D.C. Cir. 1992).  "The scope of review under the 'arbitrary and

capricious' standard is narrow and a court is not to substitute its judgment for that of the

agency" so long as the "decision was based on a consideration of the relevant factors" and

there was no "clear error of judgment."  Motor Vehicle Mfrs. Ass'n v. State Farm Mut.

Auto. Ins. Co., 463 U.S. 29, 43 (1983).  Accord Sentara-Hampton, 980 F.2d at 755; GCI

Health Care Ctrs., Inc. v. Thompson, 209 F.Supp.2d 63, 74 (D.D.C. 2002).

Moreover, "to the extent HHS has based its decision on the language of the

Medicare Act itself," the agency is owed deference in accordance with Chevron U.S.A.,

-14-

Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843-45 (1984).

Marymount Hosp., Inc. v. Shalala, 19 F.3d 658, 661 (D.C. Cir. 1994).  Under the "two-step inquiry" required by the Supreme Court's Chevron decision, a reviewing court must defer to the Secretary's construction of the Medicare Act unless the Secretary's interpretation is unreasonable.  Kidney Ctr. of Hollywood v. Shalala, 133 F.3d 78, 87 (D.C. Cir. 1998).  See also Tenet HealthSystems HealthCorp. v. Thompson, 254 F.3d 238, 243 (D.C. Cir. 2001).

Similarly, the Secretary's interpretation of his own regulations is entitled to "substantial deference," and "must be given 'controlling weight unless it is plainly erroneous or inconsistent with the regulation.'"  Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512 (1994) (citation omitted).  Thus, a court must "uphold HHS's interpretation of its own regulations so long as the interpretation is within the range of reasonable meanings that the words of the regulation admit."  Marymount Hosp., 19 F.3d at 661 (quotation marks and citation omitted).

The Supreme Court has "defined 'substantial evidence' as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Consolo v. Fed. Maritime Comm., 383 U.S. 607, 619-20 (1966) (citation omitted).  "Because this standard is something less than the weight of the evidence, . . . the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence."  GCI Health Care Ctrs., 209 F.Supp.2d at 73-74 (quotation marks and citation omitted, alteration in original).

-15-

B.    Plaintiff's Appeal of the Clinical Medical Education Programs
Issue Was Properly Dismissed for Failure to Meet the "Dissatisfaction"
Requirement, 42 U.S.C. § 1395oo(a)(1)(A)(i), for Board Jurisdiction.

1.  The PRRB denied jurisdiction because UMDNJ failed to request

reimbursement for all costs to which it was entitled, and it would not have been futile for

UMDNJ to include the cost on its cost report.  (AR 2-3 (FY 2000); AR 801-02 (FY

2001); SAR 940-41 (FY 2002); SAR 1188-89 (FY 2003).)  The PRRB based its holding

on the Supreme Court's analysis of the "dissatisfaction" requirement in Bethesda Hospital

Association v. Bowen, 485 U.S. 399, 403 (1988).

As explained by the Supreme Court, 42 U.S.C. § 1395oo(a) "addresses the

circumstances in which a [Medicare] provider may invoke the [PRRB's] jurisdiction."

Bethesda Hosp., 485 U.S. at 403.  In relevant part, the statute states that a provider that

has filed a timely cost report may obtain a hearing before the Board "with respect to such

cost report . . . if such provider . . . is dissatisfied with a final determination of . . . its

fiscal intermediary . . . as to the amount of total program reimbursement due the provider

for the items and services furnished to individuals for which payment may be made under

this subchapter for the period covered by such report."  42 U.S.C. § 1395oo(a)(1)(A)(i)

(emphasis added).

In Bethesda Hospital, hospitals submitted cost reports in compliance with the

Secretary's 1979 malpractice rule, and later requested a PRRB hearing to challenge the

validity of the 1979 regulation and secure additional reimbursement under the pre-1979

methodology.  Bethesda Hosp., 485 U.S. at 401-02.  That is, the hospitals intentionally

-16-

"effected, in the lexicon of the Medicare program, a 'self-disallowance' of malpractice

insurance costs in excess of those allowed by the 1979 regulation." Id. at 401. The

PRRB dismissed the appeal, "reasoning that [the providers] could not be dissatisfied"

with their malpractice insurance reimbursement "when they had effected a self-

disallowance of [their] claims." Id. at 402.

The Supreme Court "agree[d] that, under subsection (a)(1)(A)(i), a provider's

dissatisfaction . . . is a condition to the Board's jurisdiction." Id. at 404. Nonetheless, the

Court held that "the submission of a cost report in full compliance with

the . . . Secretary's rules and regulations does not, by itself, bar the provider from

claiming dissatisfaction with the amount of reimbursement allowed by those regulations."

Id. The Court reasoned that "the fiscal intermediary is confined to the mere application of

the Secretary's regulations, . . . is without power to award reimbursement except as the

regulations provide, and that any attempt to persuade the intermediary to do otherwise

would be futile". Id. (footnote omitted). Accord Adams House Health Care v. Bowen,

862 F.2d 1371, 1373-75 (9th Cir. 1988) (statutory "dissatisfaction" requirement met where

providers' cost reports claimed reimbursement in accordance with regulations and

Medicare Provider Reimbursement Manual, which bound the fiscal intermediaries).

Importantly, however, the Supreme Court indicated that a provider would run afoul

of § 1395oo(a)(1)(A)(i)'s "dissatisfaction" requirement if the cost report did not claim

reimbursement that was clearly permitted by the Secretary's regulations. The Court

explained that the Bethesda hospitals

-17-

> stand on different ground than do providers who bypass a clearly prescribed
> exhaustion requirement or who fail to request from the intermediary
> reimbursement for all costs to which they are entitled under applicable
> rules. While such defaults might well establish that a provider was satisfied
> with the amounts requested in its cost report and awarded by the fiscal
> intermediary, those circumstances are not presented here.

Id. at 404-05. Thus, the Court carefully limited its decision in Bethesda Hospital to

situations where a provider, first, claimed on the cost report all the reimbursement

available under the Secretary's rules and, second, challenged a regulation or policy that

bound the fiscal intermediary. UMDNJ has done neither.

2. UMDNJ's assertion that Bethesda Hospital applies to all costs, whether

allowable or not, clearly must fail. As noted above, the Supreme Court's reasoning was

based on the futility of submitting costs to the fiscal intermediary where the intermediary

is without power to award reimbursement because of a Medicare regulation. See id. at

404. See also id. at 407 ("The statute provides . . . that the intermediary has no authority

to deviate from the rules and regulations and that the Board, not the fiscal intermediary, is

to make the determination that it lacks the requisite authority to consider the validity of

the regulation. Under this statutory scheme, requiring submission of the regulatory

challenge to the fiscal intermediary is quite unnecessary. The Board has a role in shaping

the controversy that is subject to judicial review; the fiscal intermediary does not.").

Plaintiff's contention that Bethesda Hospital does not contain a limitation of its

applicability to cases where claiming the cost would be futile (Pl.'s Mem. at 8) thus begs

the question. Bethesda Hospital directly addressed only those situations where claiming a

-18-

cost would be futile, and left open the question of whether its holding would apply in

those cases where the fiscal intermediary is not "without power to award reimbursement."

Bethesda Hosp., 485 U.S. at 404.

Indeed, this case stands in stark contrast to Bethesda Hospital, where the hospitals'

cost reports claimed reimbursement in accordance with the Secretary's 1979 malpractice

rule, and the providers "self-disallowed" only as much of their malpractice insurance

expense as the fiscal intermediary was powerless to reimburse under Medicare rules.

Bethesda Hosp., 485 U.S. at 401.  Here, in contrast, "it was not futile for the Provider to

claim the full amount of reimbursement to which it was entitled."  (AR 3, AR 802, SAR

941, SAR 1189.)  It is clear from the very existence of 42 C.F.R. § 413.85 that the costs

of clinical medical education programs are allowable if providers meet certain

requirements.  UMDNJ has not alleged in any of its pleadings that it was ineligible for

payment of the costs because of a failure to meet some of the requirements of 42 C.F.R.

§ 413.85, let alone that one of the requirements for payment under this rule is invalid.  On

the contrary, Plaintiff admits that the Medicare statute allows a hospital to claim costs

associated with nursing and allied health education activities as Medicare allowable costs.

(Pl.'s Mem. at 3.)  Plaintiff does not explain why it assumes that it would not have been

paid for the costs of its clinical medical education programs had it included the costs in its

cost reports.  Indeed, it dodges the question completely, arguing that it really does not

matter whether the costs of its clinical medical education programs were allowable.  (See

Pl.'s Mem. at 8) (stating that the PRRB has jurisdiction to review any cost incurred within

-19-

the fiscal year, "regardless of whether the cost was self-disallowed or simply not requested").

A finding as to whether UMDNJ is ineligible for payment of these costs would likely require some type of investigation by the fiscal intermediary. For example, in order to determine whether UMDNJ directly operates the clinical medical education programs, the fiscal intermediary presumably would have to investigate the financial records of UMDNJ and any other entity that is involved in program operations. Moreover, even if UMDNJ submitted that the program was not directly operated by it, it could still receive payment for the program if it met one of the criteria in 42 C.F.R. § 413.85(g)(2). Perhaps UMDNJ does not believe its program meets the definition of "clinical training costs" contained in the rule. Or perhaps the costs incurred by UMDNJ are arguably costs "redistributed" from an educational institution. In any event, the burden is on the Plaintiff to make its case, and nowhere in its complaint or in its memorandum does Plaintiff allege that a flawed CMS regulation or manual provision precludes it from being reimbursed for the costs of its clinical medical education programs. Plaintiff's general, vague statement that the "Secretary's policy precludes reimbursement" (Amended Complaint at ¶25) simply cannot withstand scrutiny.

Accordingly, it was clearly reasonable for the PRRB to hold that Plaintiff cannot meet the jurisdictional "dissatisfaction" requirement because it omitted the costs of its clinical medical education programs from its cost reports where such costs are allowable and claiming them would not be futile. Put simply, inasmuch as Plaintiff never claimed

on its cost report all of the reimbursement to which it is entitled under Medicare policies, the hospital cannot establish that it was dissatisfied with the intermediary's purported "exclusion" of those costs.  Certainly, in light of the ambiguity in the "dissatisfaction" requirement recognized by the Supreme Court in Bethesda Hospital regarding allowable costs, and the importance the Supreme Court afforded to the fact that submitting the costs to the fiscal intermediary in that case would have been futile, the Board's interpretation of the statute is not unreasonable, and thus the Court must defer to the Secretary's interpretation under the deferential Chevron "two-step inquiry."  See Kidney Ctr. of Hollywood v. Shalala, 133 F.3d 78, 87 (D.C. Cir. 1998).

    3.  The Plaintiff's analysis of Bethesda Hospital is simplistic at best, disingenuous at worst.  First, UMDNJ barely acknowledges the Bethesda Hospital dicta distinguishing the providers before it from those who fail to claim costs on their cost reports.  But, as detailed above, the Bethesda Hospital decision is based almost entirely on the Supreme Court's recognition that, under the facts before it, it would have been futile for the provider to claim the costs at issue.  Accord Adams House Health Care v. Bowen, 862 F.2d 1371, 1375 (9th Cir. 1988).

    Second, UMDNJ completely ignores the fact that there have been court decisions on this very issue since the Supreme Court decided Bethesda Hospital.[4]  Indeed, the

_____

    [4]It is curious that Plaintiff anticipates the Secretary's reliance on pre-Bethesda Hospital case law, without acknowledging the cases directly on point that have been decided since Bethesda Hospital.  (Pl.'s Mem. at 9-10).  The Secretary notes that, even if portions of Athens Community Hospital v. Schweiker, 743 F.2d 1 (D.C. Cir. 1984), have

PRRB's denial of jurisdiction over Plaintiff's appeal of its own cost report treatment of the clinical medical education programs is supported by two post-<u>Bethesda Hospital</u> decisions by the United States Court of Appeals for the Seventh Circuit.  In <u>Little Co. of Mary Hosp. v. Shalala</u>, 24 F.3d 984 (7th Cir. 1994) ("<u>Little Co. I</u>"), the hospital appealed a "DRG assignment" issue to the PRRB after receiving its year-end NPR, despite having failed to first request relief from the intermediary within a prescribed 60-day period.  <u>Id.</u> at 986-87.  The Seventh Circuit found no PRRB jurisdiction because the provider had "'fail[ed] to request from the intermediary reimbursement for all costs to which they are entitled under applicable rules.'"  <u>Id.</u> at 993 (<u>quoting</u> <u>Bethesda Hosp.</u>, 485 U.S. at 404-05). The Seventh Circuit duly recognized that the "the teaching" of the Supreme Court's <u>Bethesda Hospital</u> decision is that a provider's failure to claim all the reimbursement it is entitled to under program policies is tantamount to "a failure to exhaust" administrative remedies before the fiscal intermediary, which establishes peradventure that the provider is not "dissatisfied" with the intermediary's final reimbursement determination.  <u>Little Co. I</u>, 24 F.3d at 992.

In the more recent <u>Little Co. of Mary Hosp. v. Shalala</u>, 165 F.3d 1162 (7th Cir. 1999) ("<u>Little Co. II</u>"), the hospital had incorrectly deducted its loss on debt refunding from its investment income.  The hospital failed to claim a loss on the sale of land, which

---

been superseded by <u>Bethesda Hospital</u>, other parts of <u>Athens</u> remain good law.   <u>See</u> <u>HCA Health Servs. of Okla.</u>, 27 F.3d at 621 (issue-specific reading of appeal rights after reopening); <u>Memorial Hosp. v. Sullivan</u>, 779 F. Supp. 1406, 1408 (D.D.C. 1991) (nonreviewability of an intermediary decision not to reopen).

could have been deducted from its investment income.  After an intervening Supreme

Court decision made clear that it could not deduct its loss on debt refunding, the provider

argued to the PRRB that it should be allowed to deduct the loss on the sale of land.  Id. at

1165.  The PRRB refused to hear this argument "because this would mean bypassing the

fiscal intermediary."  Id.  Noting that the statutory "dissatisfaction" standard requires the

provider to "give the intermediary a first shot at the issue, provided the issue is within the

intermediary's competence," id., the Seventh Circuit held that the hospital should have

"explain[ed] to the intermediary that it had alternative theories for why it was entitled to a

larger reimbursement."  Id. at 1166.[5]

_____

[5] The Secretary notes that the First Circuit has reached a different result regarding whether a provider must claim allowable costs to obtain Board jurisdiction.  See MaineGeneral Med. Ctr. v. Shalala, 205 F.3d 493 (1st Cir. 2000), rehearing denied sub nom., 210 F.3d 420 (1st Cir. 2000) (2-1 decision).  The Secretary respectfully submits that, for the reasons set forth in the dissenting opinion of Senior Circuit Judge Cyr in MaineGeneral, the panel majority erred in finding  PRRB jurisdiction over costs that were omitted from the cost report even though clearly allowable under the regulations. MaineGeneral Med. Ctr., 205 F.3d at 502-04 (Cyr, J. (dissenting opinion)).

In post-Bethesda Hospital decisions, the Secretary has consistently ruled that the PRRB lacks jurisdiction to review a reimbursement matter that was not prohibited by program policies, but which the provider failed to include in its cost report.  See, e.g., Hemet Valley Med. Ctr. v. Blue Cross Ass'n, CCH Medicare and Medicaid Guide, para. 80,644 (HCFA Admr. Dec., Jan. 19, 2001); Good Shepherd Med. Ctr. v. Blue Cross Ass'n, CCH Medicare and Medicaid Guide, para. 80,415 (HCFA Admr. Dec., Feb. 4, 2000); Westchester Gen. Hosp. v. Blue Cross Ass'n, CCH Medicare and Medicaid Guide, para. 45,181 (HCFA Admr. Dec., Jan. 27, 1997); Bon Secours Heartlands Home Health Agency v. Blue Cross Ass'n, CCH Medicare and Medicaid Guide, para. 41,690 (HCFA Admr. Dec., Aug. 23, 1993); Somerset Rehab., P.C. v. Blue Cross Ass'n, CCH Medicare and Medicaid Guide, para. 38,661 (HCFA Admr. Dec., Aug. 16, 1990).  Copies of the five cited HCFA Administrator decisions are attached hereto as Exhibit 1.

C.  Because Jurisdiction Did Not Attach Under Subsection (a) of 42 U.S.C.
§ 1395oo Over the Clinical Medical Education Programs Issue, the Board
<u>Had No Authority to Review That Issue Under Subsection (d) of § 1395oo.</u>

1.  Plaintiff argues that, because the Board had jurisdiction to review <u>other</u> reimbursement matters raised in its appeals, the PRRB had the authority under 42 U.S.C. § 1395oo(d) to review the clinical medical education programs issue too.  (<u>See</u> Pl. Mem. at 7.)  UMDNJ reaches this conclusion by claiming that 42 U.S.C. § 1395oo(a) "speaks of jurisdiction in terms of whole appeals, not individual issues."  (Pl.'s Mem at 6.)

However, Plaintiff is paraphrasing the jurisdictional requirement to meet its own ends.  The statute nowhere states that jurisdiction applies to "whole appeals" rather than "individual issues."  Rather, the statute provides that a provider must be "dissatisfied with a final determination . . . as to the amount of total program reimbursement due the provider for the items and services furnished to individuals for which payment may be made under this subchapter for the period covered by such [cost] report."  42 U.S.C. § 1395oo(a)(1)(A)(i).  In other words, the statute does not explicitly address one way or the other whether dissatisfaction must be expressed on an issue-specific basis.  It thus is ambiguous on this point, and the Secretary's interpretation, as set forth in the PRRB decision, is subject to deference under <u>Chevron</u>.  <u>See Alaska Dep't of Health and Social Servs. v. Centers for Medicare & Medicaid Servs.</u>, 424 F.3d 931, 938-939 (9th Cir. 2005).

In issuing the year-end NPR, the fiscal intermediary makes distinct reimbursement determinations for <u>each</u> expense item included in the provider's cost report, and then sums these distinct determinations.  The intermediary's "final determination," which here

is the NPR, thus is not simply one reimbursement amount. Rather, the NPR is comprised of many individual calculations representing the various costs for which the provider seeks payment, as evident by the portions of the NPRs included in the administrative record. (See, e.g., AR 622-796, SAR 1007-1187.) A provider rarely, if ever, would challenge before the PRRB its payment for every discrete item that goes into the total reimbursement figure. Regardless of the number of items appealed, the availability of Board jurisdiction must be assessed separately for each discrete element of the total amount of reimbursement appealed by the provider. In this case, Plaintiff cannot show dissatisfaction with the non-payment of monies stemming from its own cost report treatment of the clinical medical education programs, because the provider failed to claim those costs.

In HCA Health Services of Oklahoma v. Shalala, 27 F.3d 614, 617 (D.C. Cir. 1994), the D.C. Circuit recognized that the "final determination" is really comprised of a number of individual determinations. In upholding the Secretary's issue-specific approach to appeals of revised NPRs as permissible, the court explained that "[p]art of the final determination is obviously contained in that portion of the original NPR which was never revisited, while the remaining elements are clearly to be found in the reopening decision." Id. at 617. See also French Hosp. Med. Ctr. v. Shalala, 89 F.3d 1411, 1416 n.6 (9th Cir. 1996).

Indeed, whether PRRB jurisdiction obtains over a specific issue clearly depends on the precise circumstances of the particular issue being appealed. For example, 42 U.S.C.

§ 1395oo(g)(2) provides that determinations regarding the establishment of diagnosis-related groups ("DRGs") under 42 U.S.C. § 1395ww(d)(7) are not reviewable by the Board or the courts under § 1395oo. See also 42 U.S.C. § 1395oo(g)(1) (payment denials based on a coverage exclusion in 42 U.S.C. § 1395y are not reviewable by the Board or the courts under § 1395oo). If a provider's appeal of its NPR were limited to the payment effect of the establishment of a DRG, the Board plainly would not have jurisdiction with respect to that issue. Similarly, the PRRB would lack jurisdiction over such DRG issues even if the provider appealed other aspects of its NPR, over which the PRRB did have jurisdiction. Clearly, PRRB jurisdiction must be evaluated on an item-by-item basis.

There is thus no jurisdiction over the clinical medical education programs issue under 42 U.S.C. § 1395oo(a) simply by virtue of the fact that the PRRB had jurisdiction over other issues that were pending appeal. Accordingly, Plaintiff's reliance on § 1395oo(d) clearly runs afoul of the Supreme Court's Bethesda Hospital decision. This subsection authorizes the PRRB to affirm, modify, or reverse a determination by an intermediary with respect to a cost report, and "to make any other revisions on matters covered by such cost report . . . even though such matters were not considered by the intermediary in making such final determination." 42 U.S.C. § 1395oo(d). In Bethesda Hospital, the Supreme Court concluded that subsection (d) "allows the Board, once it obtains jurisdiction pursuant to subsection (a), to review and revise a cost report with respect to matters not contested before the fiscal intermediary." Bethesda Hosp., 485 U.S. at 406 (emphasis added). Thus, as the Ninth Circuit has explained, Bethesda

-26-

Hospital establishes that "§ 1395oo(d) not only does not expand the PRRB's jurisdiction, it has nothing whatsoever to do with the PRRB's jurisdiction. Instead . . . § 1395oo(d) governs the PRRB's scope of review." French Hosp. Med. Ctr. v. Shalala, 89 F.3d 1411, 1418-19 n. 9 (9th Cir. 1996) (emphasis in original). See also HCA Health Servs. of Okla., 27 F.3d at 617 (noting that 42 U.S.C. § 1395oo(d) did not help the hospital's argument that there was jurisdiction to decide matters decided in the original NPR but not revisited in the revised NPR because the court did not find jurisdiction under 42 U.S.C.§ 1395oo(a)). Here, since the PRRB never had jurisdiction over the clinical medical education programs issue under 42 U.S.C. § 1395oo(a), then § 1395oo(d) is completely irrelevant. Indeed, Plaintiff admits that § 1395oo(d) is only relevant once there is jurisdiction under § 1395oo(a). (Pl.'s Mem. at 7.)[6] Plaintiff "cannot use Section 1395oo(d) to bootstrap an untimely challenge or claim into the Section 1395oo(a) appeals process." Little Co. II, 994 F. Supp. 950, 962 (N.D. Ill. 1998), aff'd, 165 F.3d 1162 (7th Cir. 1999).

---

[6]Plaintiff dissection of Athens Community Hospital v. Schweiker, 743 F.2d 1 (D.C. Cir. 1984), also makes it clear that Plaintiff agrees with the Secretary's position that 42 U.S.C. § 1395oo(a) is the basis for PRRB jurisdiction, and that 42 U.S.C. § 1395oo(d) only goes to the PRRB's scope of review once jurisdiction is obtained. (Pl.'s Mem. at 9-10.)

D.    The PRRB's Statutory Interpretation Comports With Settled Principles of Exhaustion and Finality, and Supports the Proper Allocation of Responsibilities Between The Fiscal Intermediaries And The Board.

1.  As the Seventh Circuit duly recognized in Little Co. I, the "the teaching" of the Supreme Court's Bethesda Hospital decision is that a provider's failure to claim all the reimbursement to which it is entitled under program policies is tantamount to "a failure to exhaust" administrative remedies before the fiscal intermediary, which establishes peradventure that the provider is not "dissatisfied" with the intermediary's final reimbursement determination.  Little Co. I, 24 F.3d at 992.  Indeed, allowing providers to bypass the intermediaries in the manner Plaintiff did here could have dire consequences for the Secretary's orderly administration of the Medicare program.

Determining a provider's Medicare reimbursement is a most time-consuming, fact-intensive process.  The provider submits a voluminous cost report providing information as to all facets of its operations.  The fiscal intermediary then undertakes the lengthy process of reviewing the report and auditing it.  In many cases, the intermediary itself will allow various reimbursement claims included in the provider's cost report, thereby obviating any need for review by the PRRB and the federal courts.  Thus, requiring a provider to claim in its cost report all the reimbursement it is entitled to under program policies surely results in fewer Board appeals and reduced federal court litigation. Moreover, requiring full, appropriate cost report claims ensures that, even if the provider were to challenge the intermediary's application of Medicare policy, as could happen in this case, the costs at issue in the appeal will have been properly audited by the

-28-

intermediary before the matter is litigated before the PRRB, and, thus, there will be an adequate factual record for review by the Board.  In turn, the avoidance of litigation and facilitation of a complete record for any appeals and judicial review are two of the settled underpinnings of the doctrine of exhaustion of administrative remedies.  See, e.g., Weinberger v. Salfi, 422 U.S. 749, 765 (1975) ("Exhaustion is generally required as a matter of preventing premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a  record which is adequate for judicial review.").

  2.  The Board's statutory construction also furthers the interests of administrative finality.  Allowing providers to "appeal" their own conceded failure to claim on the cost report all the reimbursement they are entitled to under program policies would create perverse incentives for appeals of issues that would not otherwise be raised, simply to allow time for the providers to identify costs that were mistakenly omitted from their own cost reports.  Such "placeholder" appeals would allow providers to do an "end-run" around the requirement that any cost report reopenings occur within three years of the NPR, subject to the discretion of the fiscal intermediary.  42 C.F.R. § 405.1885(a).  If providers were permitted to raise unclaimed, allowable costs at any time during the appeal process, the principle of finality embodied in the three-year limitations period for reopenings would be thwarted entirely.

-29-

The courts have consistently recognized the importance of protecting the interests of administrative finality given the sheer magnitude of the Medicare program.  For example, in sustaining the Secretary's interpretation that appeals to the Board following a cost report reopening and revised NPR are limited to the specific reimbursement matters that were reconsidered by the intermediary, the D.C. Circuit explained:  "To subscribe to [the provider's] argument truly would frustrate the congressional purpose, plainly evidenced in the statute, to impose a time limitation upon ... review."  HCA Health Servs. of Okla., 27 F.3d at 620 (quotation marks, original alterations, and citation omitted).  See also French Hospital, 89 F.3d at 1420 ("If providers were able to call into question anything in the entire cost report, with each adjustment to the bottom line, no matter how unrelated, they would thwart the policy of finality embodied in the appeal deadline.").[7]

3.  Also, barring appeals of unclaimed, allowable costs ensures the proper allocation of responsibilities between the fiscal intermediary and the PRRB.  To start, allowing providers to appeal their own cost reporting errors would make routine de facto

---

[7]  Instead of "appealing" its own cost reporting errors to the PRRB, Plaintiff should have submitted a request for reopening to the fiscal intermediary.  See AMISUB, Inc. d/b/a North Ridge Hosp. v. Shalala, Case No. 98-7254-CIV (S.D. Fla. Oct. 31, 2000) (sustaining the Secretary's regulatory construction that the pendency of a jurisdictionally proper PRRB appeal of one reimbursement issue does not inhibit the fiscal intermediary's authority to reopen a different reimbursement matter for the same fiscal period) (copy attached hereto as Exhibit 2).  Importantly, in the case of UMDNJ's FY 2001 appeal, the hospital's appeal of the clinical medical education programs issue was filed two years after the NPR was issued, well within the three-year reopening period.  (AR 817-19, 868-75.)  With respect to its FY 2002 and FY 2003 appeals, the hospital appealed the issue within six months of receiving its NPRs.  (SAR 1002-10 (FY 2002), 1297-1305 (FY 2003).)

extensions of time for filing accurate cost reports.  Cf. 42 C.F.R. § 413.24(f)(2) (five-

month deadline for provider's submission to intermediary of perfected cost report).  By

requiring providers to claim in their Medicare cost reports all the reimbursement they are

entitled to under program policies, the Secretary's interpretation gives "providers an

incentive to prepare their cost reports with care."  MaineGeneral, 205 F.3d at 504 (Cyr, J.,

dissenting).  Without this requirement, providers would not hesitate to file incomplete

cost reports that they could always seek to correct later by appealing their own mistakes to

the Board.

As Judge Cyr found in his dissent in MaineGeneral, 205 F.3d at 504, the

Secretary's interpretation of the statutory "dissatisfaction" requirement for Board

jurisdiction fosters the important administrative policy of "maximizing [providers'] use of

the intermediary's expertise in cost assessment, as well as their utilization of the

intermediary's investigatory resources."  Indeed, as its very name indicates, the Provider

Reimbursement Review Board, which only has five members, 42 U.S.C. § 1395oo(h),

was intended by Congress to "Review" the determinations of fiscal intermediaries.  The

Board would be overwhelmed if providers were permitted to "appeal" reimbursement

they may have been entitled to - - reimbursement the intermediaries may well have paid

after the necessary audit and investigation of underlying facts if the providers had simply

included full, appropriate claims in their cost reports.

E.    In the alternative, this Court should remand to the Secretary for further factual development.

Plaintiff has not identified any regulation or manual provision that would allegedly preclude reimbursement of the costs of its clinical medical education programs, and thereby render submission of these costs to the fiscal intermediary futile.  Accordingly, the Secretary submits that the PRRB correctly held that it lacked jurisdiction over this issue, and that its decisions should be affirmed in their entirety.  If this Court were to conclude, however, that the extant record does not conclusively show whether it would have been futile for the provider to claim these costs, the Secretary would respectfully request, in the alternative, that the Court remand this matter to the Secretary for further factual development of the record.

Neither Plaintiff's amended complaint nor its summary judgment memorandum, nor any documents in the administrative record, provide any information as to whether Plaintiff in fact incurred costs related to clinical medical education programs and, if so, whether such costs would be reimbursable as "pass-through" costs, meaning in addition to its PPS payments.  It is axiomatic that Federal court review of agency action under the Administrative Procedure Act is generally limited to the administrative record that was before the agency at the time of its decision.  Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 420 (1971); Walter O. Boswell Memorial Hosp. v. Heckler, 749 F.2d 788, 792 (D.C. Cir. 1984).  Thus, if this court determines that there is insufficient evidence in the record to determine whether the PRRB correctly concluded that it lacked

jurisdiction over the clinical medical education programs issue, this matter should be remanded to the Secretary to develop a better factual record regarding whether it would have been futile for UMDNJ to claim reimbursement for the costs of such a program. Factual development on remand could clarify the basis for UMDNJ's bald assertion that the Secretary's policy precludes payment for these costs. (See Amended Complaint at ¶25). A remand could also provide further information regarding, for example, whether UMDNJ meets the requirements of 42 C.F.R. § 413.85(f) as a direct operator of the clinical medical education programs or falls within the criteria of 42 C.F.R. § 413.85(g)(2) as a non-direct operator, and whether any of the costs that UMDNJ claims it incurred constitute a "redistribution" of costs from an educational institution to UMDNJ.

## CONCLUSION

For the foregoing reasons, this Court should grant Defendant's Motion for Summary Judgment with respect to Plaintiff's 2000, 2001, and 2003 cost years; dismiss for lack of subject matter jurisdiction all Plaintiff's claims for the 1999 and 2002 cost year, or, even if the Court were to find subject matter jurisdiction, grant summary judgment with respect to those cost years also; and deny Plaintiff's Motion for Summary Judgment in its entirety.

Alternatively, for each cost year for which this Court finds subject matter jurisdiction, the Court should remand this matter to the Secretary for further factual

development on the issue of whether it would have been futile for UMDNJ to claim

reimbursement of it clinical medical education programs costs on such cost reports.


July 6, 2007                              Respectfully submitted,


                                          _____/s/_____
                                          JEFFREY A. TAYLOR
                                          United States Attorney
                                          D.C. Bar No. 498610



                                          _____/s/_____
                                          MEGAN L. ROSE
                                          Assistant United States Attorney
                                          N.C. Bar No. 28639
                                          Civil Division
                                          555 Fourth Street, N.W.
                                          Washington, D.C. 20530
                                          (202) 514-7220
                                          Facsimile: (202) 514-8780



                                          _____/s/_____
                                          SUSAN MAXSON LYONS
                                          D.C. Bar No. 434249
                                          Attorney
                                          U.S. Department of Health and
                                             Human Services
                                          Office of the General Counsel
                                          Room 5309 Cohen Building
                                          330 Independence Ave., S.W.
                                          Washington, D.C. 20201
                                          (202) 619-3802
                                          Facsimile: (202) 401-1405

                                          Counsel for Defendant