UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UMDNJ-UNIVERSITY HOSPITAL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:06CV01200 (EGS) |
| | ) | |
| MICHAEL O. LEAVITT, Secretary | ) | |
| of the United States Department | ) | |
| of Health and Human Services, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS AND MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

The Defendant Secretary of Health and Human Services ("Secretary") has

demonstrated that this Court does not have subject matter jurisdiction over Plaintiff

UMDNJ-University Hospital's ("Plaintiff" or "UMDNJ") claims for its 1999 cost year.

(Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss

and for Summary Judgment and in Opposition to Plaintiff's Motion for Summary

Judgment ("Defendant's Opening Brief" or "Def. Br.") at 10-12.)[1]  Plaintiff has not

responded to the Secretary's argument that this Court lacks subject matter jurisdiction

over the 1999 fiscal period claims, and so has conceded the point.

---

[1]While defendant raised a similar argument with respect to the 2002 cost year, the
Secretary has reconsidered that argument and is no longer pursuing dismissal on the basis
of lack of subject matter jurisdiction for that cost year.

The Secretary has further shown that the final decisions of the Provider

Reimbursement Review Board ("PRRB" or "Board"), dismissing for lack of jurisdiction

Plaintiff's appeals of its fiscal years 2000-2003 Medicare reimbursement pertaining to the

costs of the provider's clinical medical education programs, are based on a permissible

interpretation of the Medicare statute and regulations; are supported by substantial record

evidence; and comport with settled principles of exhaustion and finality, and support the

proper allocation of responsibilities between the PRRB and the Secretary's contractors,

the fiscal intermediaries.  (Def. Br. at 14-33.)  In Plaintiff's Opposition to Defendant's

Motion to Dismiss and Motion for Summary Judgment and Reply to Opposition to

Motion for Summary Judgment ("Plaintiff's Opposition" or "Pl. Opp."), UMDNJ

attempts to recast the governing law and record evidence so as to surmount the Board's

jurisdictional dismissal decisions.  As shown below, however, Plaintiff's Opposition is

singularly unavailing, and the PRRB's final decisions must be sustained.

**THE BOARD PROPERLY DISMISSED FOR LACK OF JURISDICTION UMDNJ'S APPEALS OF ITS OWN COST REPORT TREATMENT OF ITS CLINICAL MEDICAL EDUCATION PROGRAMS.**

      A.      Substantial Deference Is Owed to the PRRB's
                 <u>Permissible Construction of the Statutory Language</u>

1. Plaintiff nowhere articulates how, under any definition of "dissatisfied," a

provider can meet the "dissatisfaction" requirement of 42 U.S.C. § 1395oo(a)(1)(A)(i) for

Board jurisdiction when, as here, the provider was not reimbursed for a cost simply

because it did not claim reimbursement for the cost in its Medicare cost report, even

though such a cost report claim would not have been futile. With no definition in the statute of the term "dissatisfied," it is reasonable for the Secretary to conclude that a provider cannot meet the jurisdictional prerequisite of dissatisfaction under these circumstances.[2]

Moreover, as the Secretary detailed in his opening brief, the statutory language at issue here is ambiguous. The statute nowhere states that the dissatisfaction requirement for Board jurisdiction applies only with respect to "whole appeals" rather than "individual issues." (See Def. Br. at 24; cf. Memorandum of Points and Authorities in Support of Plaintiff's Motion for Summary Judgment ("Plaintiff's Opening Brief" or "Pl. Opening Br.") at 6.) Because the statute does not explicitly address one way or the other whether dissatisfaction must be expressed on an issue-specific basis, it is ambiguous on this point, and the Secretary's interpretation, as set forth in the PRRB decisions, is owed substantial deference under Chevron, U.S.A. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984). See Alaska Dep't of Health and Social Servs. v. Centers for Medicare & Medicaid Servs., 424 F.3d 931, 938-939 (9th Cir. 2005).

UMDNJ mistakenly asserts that the statutory language is clear, and that the PRRB's interpretation of the Medicare statute thus is not entitled to any deference. (Pl. Opp. at 6-9, 15.) Plaintiff does not address the arguments advanced by the Secretary in

---

[2]In the ensuing section we demonstrate that the dictum in Bethesda Hospital Ass'n v. Bowen, 485 U.S. 399 (1988), supports the Secretary's interpretation. (See also Def. Br. at 17-19 (discussing Bethesda Hospital dictum).)

his opening brief regarding the ambiguity of the statute.  Nor does UMDNJ address the

two Seventh Circuit cases upholding the Secretary's construction, which were decided

after the Supreme Court's ruling in Bethesda Hospital Ass'n v. Bowen, 485 U.S. 399

(1988), except to note that the Seventh Circuit decisions are "out-of-jurisdiction."  See

Little Co. of Mary Hosp. and Health Care Ctrs. v. Shalala, 24 F.3d 984 (7th Cir. 1994)

("Little Co. I"); Little Co. of Mary Hosp. and Health Care Ctrs. v. Shalala, 165 F.3d 1162

(7th Cir. 1999) ("Little Co. II"); Pl. Opp. at 16.[3]

    Little Co. II goes precisely to this issue, since the provider in that case originally

appealed the NPR because it had not been paid for certain costs that the provider had

claimed on its cost report, but which were disallowed in the fiscal intermediary's NPR.

Only later did the provider seek reimbursement of an allowable cost that it had not

included on its cost report.  See Little Co. II, 165 F.3d at 1165.  Although there was

PRRB jurisdiction over the initial appeal of the NPR, the Seventh Circuit held that the

Board lacked jurisdiction over the provider's later appeal of an allowable cost that the

---

[3]The Secretary acknowledges that the majority opinion in the First Circuit's
MaineGeneral decision did not accord Chevron deference to the agency's denial of Board
jurisdiction over unclaimed, but allowable, costs.  See MaineGeneral Med. Ctr. v.
Shalala, 205 F.3d 493 (1st Cir. 2000), rehearing denied sub nom., 210 F.3d 420 (1st Cir.
2000).  The Secretary respectfully submits, however, that the dissenting opinion of Senior
Circuit Judge Cyr in the MaineGeneral case is better reasoned on the deference issue, for
the dictum in Bethesda Hospital "would seem – at the very least – to make it inarguable
that reasonable minds might determine to treat [the] two categories of healthcare
providers[, one of which neglected to include an allowable cost and one of which self-
disallowed a cost that is not allowable under the Medicare regulations,] differently for
jurisdictional purposes."  MaineGeneral, 205 F.3d at 504 (Cyr., J., dissenting).

provider failed to claim on its cost report.  The court reached this conclusion by analyzing the statutory language and looking to <u>Bethesda Hospital</u> for guidance, concluding that "while the statute is curiously worded, the intent is plain that the provider must give the intermediary a first shot at the issue, provided the issue is within the intermediary's competence . . . ."  <u>Little Co. II</u>, 165 F.3d at 1166.

2.  Understanding how the cost-reporting process works is helpful in determining the reasonableness of the Secretary's interpretation and the ambiguity in the statutory language.  The intermediary makes periodic payments to the provider during the course of its fiscal year.  <u>See</u> 42 U.S.C. § 1395g.  <u>See also</u> <u>Good Samaritan Hosp. v. Shalala</u>, 508 U.S. 402, 406-07, 410 (1993).  The NPR is a "truing up" that occurs at the end of the fiscal year.  It reflects the intermediary's comparison of the overall reimbursement for the reporting period with estimated payments already made to the provider.  Any deficiency is paid by the Secretary, and any overpayment is repaid by the provider.  42 C.F.R. §§ 405.1803(c), 413.60(c).  As the Seventh Circuit recognized, "because the PRRB only had jurisdiction to hear a challenge to a 'final determination of the . . . intermediary' as to the 'amount of total program reimbursement,' only the issuance of the year-end NPR – and not the interim payments themselves – would trigger Board jurisdiction."  <u>Little Co. I</u>, 24 F.3d at 988 (quoting 42 U.S.C. § 1395oo(a)(1)(A)(i)).

The statutory reference to "total" thus does not foreclose the Secretary's interpretation that, in order to be "dissatisfied" with the non-payment of a discrete cost,

the provider must have claimed in its cost report all of the reimbursement for the cost

that it is entitled to under Medicare policies. Rather, Congress used the phrase "amount

of total program reimbursement" merely to distinguish the year-end NPR, over which the

PRRB would have jurisdiction if the "dissatisfaction" requirement and other jurisdictional

requirements are met, from interim payments, over which the PRRB lacks jurisdiction

regardless of whether the provider is dissatisfied with those payments.

      3. UMDNJ's construction of the statutory language improperly exaggerates the

significance of the phrase "amount of total program reimbursement" and minimizes the

statutory reference to "final determination." As the Secretary explained on pages 24-25

of Defendant's Opening Brief, when issuing the year-end NPR, the fiscal intermediary

makes distinct reimbursement determinations for <u>each</u> expense item included in the

provider's cost report, and then sums these distinct determinations. The intermediary's

"final determination" thus is not simply one "total" reimbursement amount, but rather a

summation of many different individual reimbursement determinations. In light of this

fact, it is certainly reasonable for the PRRB to conclude that dissatisfaction must be

expressed with respect to an individual cost reimbursement determination in order for the

Board to have jurisdiction over an appeal of that particular determination.

      <u>HCA Health Services of Oklahoma v. Shalala</u>, 27 F.3d 614 (D.C. Cir. 1994),

supports, rather than contradicts, the Secretary's interpretation. (<u>Cf.</u> Pl. Opp. at 8-9.) The

language from <u>HCA</u> that UMDNJ quotes merely states that the NPR is a final

determination.  The Secretary does not dispute that a provider can appeal its year-end NPR so long as the provider is dissatisfied with some aspect of it; the issue is which individual issues can be raised on appeal to the PRRB.  The relevance of HCA to this case is the Circuit's recognition that the original NPR is really comprised of many individual determinations, and thus can be analyzed in terms of its individual elements when trying to determine the elements of a "final determination" in the context of a revised NPR.  See HCA, 27 F.3d at 617 ("[W]hen an intermediary revisits only certain specified determinations contained in the original NPR . . . [p]art of the final determination is obviously contained in that portion of the original NPR which was never revisited, while the remaining elements are clearly to be found in the reopening decision.") (emphasis added); see also Def.'s Br. at 25.  The Secretary's citation of HCA was not misleading, as UMDNJ suggests.  (See Pl. Opp. at 11-14.)  The Secretary acknowledged that HCA addresses revised NPRs, and did not argue that HCA's holding directly applies to this case.  (See Def.'s Br. at 25, 30.)

The Ninth Circuit's recent decision in Loma Linda University Medical Center v. Leavitt, 492 F.3d 1065 (9th Cir. 2007), turned on subsection (a)'s reference to " final determination . . . as to the amount of total program reimbursement due the provider for the items and services."  The Ninth Circuit did not accord Chevron deference to the Secretary's interpretation of this language, and held that Board jurisdiction existed where a provider failed to claim a clearly allowable cost.  Id. at 1070, 1073.  The Secretary

respectfully submits that the Ninth Circuit erred in reaching this conclusion because, like

UMDNJ, it failed to recognize the ambiguity of the statutory language and placed

excessive emphasis on the statutory reference to "total."  See id. at 1070-71.  Moreover,

the Ninth Circuit erred in looking to subsection (d) of 42 U.S.C. § 1395oo to support its

interpretation of subsection (a).  See id. at 1068.[4]

4.  The Secretary is not creating an "exhaustion" requirement for PRRB

proceedings, as Plaintiff alleges.  (See Pl. Opp. at 7.)  Rather, he is interpreting the

statutory jurisdictional requirement of "dissatisfaction" with the fiscal intermediary's final

reimbursement determination.  It is reasonable for the Secretary to conclude that a

provider cannot credibly claim to be dissatisfied if it is not paid for a cost that is

allowable under Medicare payment policies, a cost that the provider did not claim in its

own cost report where doing so would not have been futile.  Even UMDNJ does not argue

that it could have appealed its NPR to the Board had it been paid in full for all costs that it

claimed in its cost report.  Plaintiff's argument that there is no exhaustion requirement at

---

[4]The Secretary recognizes that in the Loma Linda decision, the Ninth Circuit stated
that French Hospital Medical Center v. Shalala, 89 F.3d 1411 (9th Cir. 1996), was not
inconsistent with the Ninth Circuit's construction of 42 U.S.C. § 1395oo(a) as providing
for Board jurisdiction over unclaimed but allowable costs.  See 492 F.3d at 1072.  The
French Hospital decision, however, did not include the same explicit recognition as HCA
that the original NPR contains a number of discrete determinations, some, but not all, of
which comprise the "final determination" in the revised NPR.  Moreover, it is one thing
to hold that case law on revised NPRs is not inconsistent with a construction of the
statute, as did the Ninth Circuit, and quite another thing to argue, as does UMDNJ here,
that it affirmatively supports that construction.

the Board level is thus a red herring - - clearly a provider must have not been paid for

<u>something</u> it requested on its cost report in order for it to be dissatisfied for purposes of

Board jurisdiction.  The issue before this Court thus is not whether the Secretary has

created an "exhaustion" requirement at an intermediary level.  Rather, the issue is whether

the statutory language is ambiguous, in which case the Secretary's interpretation of it as

requiring a cost report claim for allowable costs on an item-by-item basis must be

accorded deference.[5]

       B.     The Board's Jurisdictional Dismissal Decision Comports
              <u>with the Supreme Court's Bethesda Hospital Decision.</u>

      1.     In Plaintiff's Opening Brief, UMDNJ claims that <u>Bethesda Hospital</u>'s

"ultimate holding regarding PRRB jurisdiction clearly encompassed both [those providers

who self-disallowed reimbursement and those who failed to request reimbursement for all

costs to which they were entitled]."  (Pl. Br. at 8.)  Now, faced with the <u>Bethesda Hospital</u>

dictum, UMDNJ asserts that "<u>Bethesda</u> . . . did not decide the issue of whether claims not

involving a challenge to the Secretary's regulations must first be brought before the

intermediary in order for PRRB jurisdiction to attach."  (Pl. Opp. at 1-2.)  Plaintiff cannot

have it both ways.

_____

[5]The Secretary does note, however, that his interpretation of the Board jurisdictional provisions is consistent with the exhaustion principles that are so important in the Medicare context and that, as the Seventh Circuit held in <u>Little Co. I</u>, failure to express dissatisfaction is tantamount to a failure to exhaust.  <u>See</u> Def. Br. at 28-29; <u>Little Co. I</u>, 24 F.3d at 992.

The Secretary has consistently recognized that the <u>Bethesda Hospital</u> holding does not address the particular fact pattern at issue here. (<u>See</u> Def.'s Br. at 18-19.) But the Supreme Court's analysis, focusing in large part on the fact that the intermediary in that case had no authority to deviate from the rules and regulations, clearly is relevant. This recognition of the clear unallowability of the cost at issue and the futility of the provider's presenting its claim to the fiscal intermediary pervades the Court's opinion. <u>See</u> <u>Bethesda</u> <u>Hosp.</u>, 485 U.S. at 404 ("Providers know that . . . the fiscal intermediary is confined to the mere application of the Secretary's regulations, that the intermediary is without power to award reimbursement except as the regulations provide, and that any attempt to persuade the intermediary to do otherwise would be futile."); 404-05 (stating that the "default" of "providers . . . who fail to request from the intermediary reimbursement for all costs to which they are entitled under applicable rules . . . might well establish that a provider was satisfied with the amounts requested in its cost report and awarded by the fiscal intermediary . . . ."); 407 (noting in the context of expedited judicial review that "[t]he statute provides . . . that the intermediary has no authority to deviate from the rules and regulations and that the Board, not the fiscal intermediary, is to make the determination that it lacks the requisite authority to consider the validity of the regulation. Under this statutory scheme, requiring submission of the regulatory challenge to the fiscal intermediary is quite unnecessary. The Board has a role in shaping the controversy that is subject to judicial review; the fiscal intermediary does not.").

-10-

The <u>Bethesda Hospital</u> dictum indicates that the Supreme Court would defer to the Secretary's interpretation of the jurisdictional dissatisfaction requirement in appropriate circumstances.[6] Indeed, the focus on futility indicates that the Supreme Court would reach a different result here, where the fiscal intermediary "has a role in shaping the controversy that is subject to judicial review." <u>Id.</u> at 407. There is much work for the fiscal intermediary to do before a sufficient record can even be developed regarding whether the provider has incurred the costs of a clinical medical education program and whether, upon application of Medicare payment policies to the facts of this particular case, such costs would be reimbursed. Unlike <u>Bethesda Hospital</u>, this case does not present a challenge to the lawfulness of a regulation. UMDNJ has not even suggested, much less cited to, any such regulatory challenge. Apparently this is why UMDNJ would have this Court ignore the language from <u>Bethesda Hospital</u> regarding futility, and why Plaintiff contends that the Secretary's arguments regarding futility are irrelevant. (Pl. Opp. at 16-17.)

UMDNJ also asserts that "it may well have been futile for the Hospital to have claimed the Nursing School Costs . . . because the Hospital has claimed the costs on subsequent years' cost reports . . . and has yet to be reimbursed for any of them." (Pl. Opp. at 17.) But as <u>Bethesda Hospital</u> makes clear, claiming reimbursement for a cost is

_____

[6]The point is underscored by the Supreme Court's extension of <u>Chevron</u> deference to the Secretary's construction of § 1395oo(a) in the reopening context. <u>Your Home Visiting Nurse Servs., Inc. v. Shalala</u>, 525 U.S. 449, 453 (1999).

not futile merely because, at the end of the day, a provider is not paid for that cost.

Rather, futility goes to whether the fiscal intermediary has discretion to reimburse the

cost, and whether there is any fact-finding to be done by the fiscal intermediary.  Since

UMDNJ has not directed the Court to any provision that would deprive the fiscal

intermediary of the authority to reimburse the costs of a clinical medical education

program, the dictum in Bethesda Hospital is controlling, rather than the holding of that

decision.[7]  Moreover, UMDNJ has not provided any information here on why it has not

been paid the costs at issue in subsequent years.  Perhaps the fiscal intermediary simply

has not issued NPRs yet for those years.

     2.  In backing away from its initial position that the ultimate holding in Bethesda

Hospital applies regardless of whether the unclaimed costs are allowable, UMDNJ asserts

that the relevance of Bethesda Hospital is its determination that 42 U.S.C. § 1395(a),

rather than 42 U.S.C. § 1395(d), is the applicable statutory provision for determining

PRRB jurisdiction.  (Pl. Opp. at 9-10.)  The Secretary does not dispute that subsection (a)

of 42 U.S.C. § 1395oo, rather than subsection (d), is the applicable provision for

determining Board jurisdiction.  Indeed, the Secretary has demonstrated that subsection

(d) is totally irrelevant to the jurisdictional determination, since Board jurisdiction over

---

     [7]As set forth in Defendant's Opening Brief at 32-33, however, if this Court were to conclude that the extant record does not conclusively show whether it would have been futile for the provider to claim these costs, the Secretary would respectfully request, in the alternative, that the Court remand this matter to the Secretary for further factual development of the record.

plaintiff's clinical medical education program claims never attached under subsection (a).

(Def. Br. at 24-27.)  It is for this reason that UMDNJ's reliance on subsection (d) (see

Plaintiff's Opening Brief at 7) runs afoul of Bethesda Hospital.[8]

In fact, it is precisely the Secretary's recognition of subsection (a) as the relevant

jurisdictional provision that informs the Secretary's conclusion that MaineGeneral was

wrongly decided.[9]  The MaineGeneral majority held that it was bound by the First

Circuit's pre-Bethesda Hospital decision in St. Luke's Hospital v. Secretary of Health and

Human Services, 810 F.2d 325 (1st Cir. 1987) ("St. Luke's"), even though the

jurisdictional analysis in St. Luke's was based on 1395oo(d), and thus was inconsistent

_____

[8]The courts have squarely rejected Plaintiff's notion that § 1395oo(d) can be used to "bootstrap" jurisdiction over one issue based on a separate issue that does meet § 1395oo(a)'s jurisdictional requirements.  Little Co. II, 994 F. Supp. 950, 962 (N.D. Ill. 1998), aff'd, 165 F.3d 1162 (7th Cir. 1999).  Indeed, the evident implication of Plaintiff's contrary view, that PRRB jurisdiction applies to the entire NPR instead of on an issue-by-issue basis, is that § 1395oo(d) would allegedly support jurisdiction over the clinical medical education programs issue even if the only other issues pending in the provider's appeal were matters expressly removed from Board jurisdiction under 42 U.S.C. § 1395oo(g)(1), (2).  (See Def. Br. at 25-26.)  Clearly, Congress could not have intended such a bizarre result.

[9]UMDNJ does not address the post-Bethesda Hospital cases that speak to the issue before this Court, except to assert that it is not necessary for this Court to consider out-of-jurisdiction rulings, and to accuse the Secretary of rejecting rulings "simply on the grounds that the Secretary does not like the outcome in those decisions."  (Pl. Opp. at 16.) Accordingly, the Secretary provides in this brief a fuller explanation as to why the MaineGeneral decision was wrongfully decided, and why the Ninth Circuit's recent Loma Linda decision is erroneous.  See supra. at 7-8; infra. at 13-15.  In any event, even under the MaineGeneral and Loma Linda decisions, the PRRB has discretion not to exercise jurisdiction over unclaimed costs.  See MaineGeneral, 205 F.3d at 501; Loma Linda, 492 F.3d at 1072-73.

with the analysis subsequently adopted by the Supreme Court in Bethesda Hospital. See St. Luke's, 810 F.2d at 325-26. St. Luke's did not even mention section 1395oo(a)'s "dissatisfaction" requirement, which the Supreme Court later held in Bethesda Hospital to be a requirement for Board jurisdiction. Bethesda Hosp., 485 U.S. at 404.

Nevertheless, the majority in MaineGeneral held that it was bound by St. Luke's, reasoning that St. Luke's had not relied on section 1395oo(d) alone, but also on legislative history, the nature of judicial and administrative appellate bodies, other subsections of 1395oo (such as subsection (f)), and special features of Board review. 205 F.3d at 498. The majority also reasoned that Bethesda Hospital did not rely on section 1395oo(a) alone. It found that Bethesda Hospital "makes nothing of the possible distinction between 'subsection (a)' and 'subsection (d)' cases," but examines section 1395oo "as a whole," including subsection (d). MaineGeneral, 205 F.3d at 498-99. Accordingly, the MaineGeneral court concluded, Bethesda Hospital did not affect the analysis employed by St. Luke's, and the court was bound by the holding in St. Luke's that the Board had jurisdiction over unclaimed costs. In so holding, the majority in MaineGeneral explicitly relied on subsection (d). It ruled that the costs at issue were "a matter covered by a cost report," and that no deference was due to the Secretary's interpretation because subsection (d) is not ambiguous. Id. at 499. Most significantly, the MaineGeneral court did not even address whether the provider in MaineGeneral had shown "dissatisfaction."

The MaineGeneral analysis thus is fatally flawed because it completely ignores the Supreme Court's holding in Bethesda Hospital, recognized by UMDNJ in Plaintiff's Opposition,  that the requirements for PRRB jurisdiction lie exclusively under subsection (a), whereas subsection (d) merely "sets forth the powers and duties of the Board . . . once it obtains jurisdiction pursuant to subsection (a)."  Bethesda Hosp., 485 U.S. at 405-06.  Thus, by relying on a pre-Bethesda Hospital opinion that determined Board jurisdiction based on section 1395oo(d) rather than section 1395oo(a), the majority opinion in MaineGeneral ultimately did not even require a showing of dissatisfaction.  Instead, it mistakenly allowed the provider to "use Section 1395oo(d) to bootstrap an untimely challenge or claim into the Section 1395oo(a) appeals process."  Little Co. II, 994 F. Supp. at 962.[10]

---

[10]UMDNJ criticizes the Secretary's citation of Memorial Hospital v. Sullivan, 779 F.Supp. 1406 (D.D.C. 1991), as irrelevant to the Secretary's jurisdictional arguments.  But Defendant's Opening Brief does not cite it for that purpose.  Rather, it merely cites the case for the unremarkable proposition that, although the portion of Athens Community Hospital, Inc. v. Schweiker, 743 F.2d 1 (D.C. Cir. 1984), that is relevant to the issue before this Court has been superseded by Bethesda Hospital, other parts of Athens remain good law.  (See Def. Br. at 21-22 n.4.)

The Plaintiff also raises the straw man argument that the portion of the Secretary's brief that sets forth the requirement of a final agency decision for district court jurisdiction has nothing to do with requirements for PRRB jurisdiction.  (Pl.'s Opp. at 14-15.)  The Secretary never claimed that it did.  Rather, that portion of the Secretary's brief addressed only the absence of subject matter jurisdiction over Plaintiff's 1999 cost year, as there was never a final PRRB decision on the issue of whether UMDNJ should be paid for a clinical medical education program for that period.  (See Def. Br. at 10-12.)

## CONCLUSION

For the foregoing reasons, and for reasons set forth in Defendant's Opening Brief, this Court should grant Defendant's Motion for Summary Judgment with respect to Plaintiff's 2000-2003 cost years; dismiss for lack of subject matter jurisdiction all Plaintiff's claims for the 1999 cost year or, even if the Court were to find subject matter jurisdiction, grant summary judgment with respect to that cost year also; and deny Plaintiff's Motion for Summary Judgment in its entirety.

Alternatively, for each cost year for which this Court finds subject matter jurisdiction, the Court should remand this matter to the Secretary for further factual development on the issue of whether it would have been futile for UMDNJ to claim reimbursement of its clinical medical education programs costs on such cost reports. September 21, 2007.

Respectfully submitted,


___/s/_____

JEFFREY A. TAYLOR
United States Attorney
D.C. Bar No. 498610


___/s/_____

CHARLOTTE A. ABEL
D.C. Bar No. 388582
Assistant United States Attorney
Judiciary Center Building
555 4th St., N.W., Room 10-106
Washington, D.C.  20530
(202) 307-2332
Facsimile: (202) 514-8780


_____/s/_____

SUSAN MAXSON LYONS
D.C. Bar No. 434249
Attorney
U.S. Department of Health and
     Human Services
Office of the General Counsel
Room 5309 Cohen Building
330 Independence Ave., S.W.
Washington, D.C. 20201
(202) 619-3802
Facsimile: (202) 401-1405

Counsel for Defendant