**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                )
UMDNJ-UNIVERSITY HOSPITAL        )
                                )
            Plaintiff,           )
                                )
                                )   Civ. No. 06-1200 (EGS)
        v.                       )
                                )
MICHAEL O. LEAVITT,              )
SECRETARY OF UNITED STATES       )
DEPARTMENT OF HEALTH AND         )
HUMAN SERVICES,                  )
                                )
            Defendant.           )
_____ )

<u>**MEMORANDUM OPINION**</u>


    Plaintiff UMDNJ-University Hospital ("UMDNJ"), a provider of
hospital services located in Newark, New Jersey, seeks judicial
review of final decisions of the Secretary of Health and Human
Services ("Secretary") denying jurisdiction over Plaintiff's
appeals of its Medicare reimbursement pertaining to the costs of
UMDNJ's "clinical medical education programs" for its 2000, 2001,
2002, and 2003 fiscal years.[1]  The Provider Reimbursement Review
Board ("PRRB" or "Board") concluded that it did not have

---

    [1] Plaintiff initially also sought review of the Board's
decision pertaining to fiscal year 1999 but has since abandoned
that claim.  _See generally_ Pl.'s Opp'n.  Consequently, that claim
is dismissed.  Likewise, the Secretary initially moved to dismiss
plaintiff's claim regarding fiscal year 2002 for lack of subject
matter jurisdiction, but has since reconsidered and is no longer
pursuing dismissal on this basis.  Def.'s Reply at 1.

jurisdiction over the issue of reimbursement for the clinical medical education programs because plaintiff never sought reimbursement for those programs from its fiscal intermediary. Pl.'s Mot., Ex. 4.

Plaintiff contends that the Supreme Court's decision in *Bethesda Hosp. Ass'n. v. Bowen*, 485 U.S. 399, 402 (1988) permits the PRRB to assume jurisdiction over claims brought for the first time on appeal, even when the hospital did not seek reimbursement from its fiscal intermediary for the costs in question. Defendant counters that the hospital cannot appeal claims for allowable costs not first considered by the fiscal intermediary. The parties have agreed that there are no material facts in dispute and this controversy can be resolved on cross motions for summary judgment, which have been filed and fully briefed. For the reasons articulated herein, the Court concludes that the plain language of the Medicare statute grants the PRRB jurisdiction to hear claims for reimbursement not previously brought before the fiscal intermediary. Accordingly, defendant's Motion for Summary Judgment is **DENIED** and plaintiff's Motion for Summary Judgment is **GRANTED.**

I.    **Factual Background**

   A.    **Statutory and Regulatory Framework**

   The Medicare statute, 42 U.S.C. § 1395 et seq., sets forth a federal health insurance program for the elderly and disabled.

2

A hospital participates in Medicare under a "provider agreement" with the Secretary.  42 U.S.C. § 1395cc.  In 1983, Congress enacted a Medicare reimbursement program known as the Prospective Payment System ("PPS") which replaced the prior practice of reimbursing hospitals based on the "reasonable costs" of covered services.  *County of Los Angeles v. Shalala*, 192 F.3d 1005, 1008 (D.C. Cir. 1999), *cert. denied*, 530 U.S. 1204 (2000).  Under the PPS, Medicare pays hospitals for their inpatient operating costs on the basis of prospectively determined flat rates, set according to historic regional costs and patients' diagnoses, rather than on a reasonable-cost basis. *Id.*  The hospital is thus responsible for costs in excess of the flat rates and retains excess funds when its costs are lower.  Def.'s Mot. at 4.  Approved educational activities are not included in the PPS rates, rather these costs continue to be reimbursed on a "reasonable cost" basis. *Id.*

The Secretary has delegated much of the responsibility for administering the Medicare Program to the Centers for Medicare and Medicaid Services ("CMS").  *See* 42 U.S.C. §§ 1395h, 1395u.  The Secretary, through CMS, delegates many of Medicare's audit and payment functions to organizations known as fiscal intermediaries, which are generally private insurance companies.  At the close of a fiscal year, a provider of services must submit to its intermediary a "cost report" showing both the costs

incurred by it during the fiscal year and the appropriate share of those costs to be apportioned to Medicare.  42 C.F.R. § 413.24(f).  The intermediary is required to analyze and audit the cost report and inform the provider of a final determination of the amount of Medicare reimbursement through a notice of program reimbursement ("NPR").  *Id.* § 405.1803.  If a provider is unhappy with the total amount of reimbursement indicated by the NPR, it may appeal to the PRRB.  The decision of the PRRB is final unless CMS reverses, affirms, or modifies it within 60 days from the provider's receipt of the decision.  42 U.S.C. § 1395oo (f) (1); 42 C.F.R. §§ 405.1875 (a), 405.1877 (a).  If the Administrator declines review, the Board's decision is final and the provider must file a civil action within 60 days from receipt of the Board's decision. *Id.*

**B.    Standard of Review**

The Court may set aside the Board's decision only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, or unsupported by substantial record evidence."  *HCA Health Services of Oklahoma, Inc. v. Shalala*, 27 F.3d 614, 616 (D.C. Cir. 1994) (citing 5 U.S.C. § 706 (2) (A) & (E)).  "[T]o the extent [the Board's interpretation is] based ... on the language of the Medicare [Statute] itself," the Court will examine the decision with the appropriate deference due to an agency that has been charged with administering the Statute.  *Id.*

(quoting *Marymount Hospital Inc. v. Shalala*, 19 F.3d 658, 661 (D.C. Cir. 1994)). Unless Congress has spoken to the particular issue at hand, the Court will defer to the agency's interpretation whenever it is a permissible construction of the statute. *Id; see Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-45 (1984).

### C.   Plaintiff's Complaint

For fiscal years 2000-2003, UMDNJ submitted cost reports to its fiscal intermediary that did not claim costs related to its clinical medical education programs ("CMEP").  In each instance, after the intermediary issued the NPR for the respective cost year, the hospital filed an appeal of the NPR with the PRRB in accordance with the above regulations.  In each appeal, plaintiff contested several issues contained in the NPRs, including whether costs associated with the clinical medical education programs should have been reimbursed for the years in question.  The intermediary challenged the jurisdiction of the PRRB to hear the CMEP issue, arguing that because the costs associated with CMEP had not been claimed as allowable costs when the relevant cost reports were filed by the hospital, the PRRB lacked jurisdiction on appeal to determine whether reimbursement was required.  The hospital filed this action to challenge the PRRB's jurisdictional rulings.  *See* Pl.'s Mot. 3-4.

## II.  Discussion

5

**A.    The Role of § 1395oo**

The statutory provisions at issue in this case are subsections (a) and (d) of 42 U.S.C 1395oo.  Subsection (a) establishes the jurisdiction of the Board, and states that a provider may obtain a hearing before the Board with respect to its cost report if

> such provider 1) is dissatisfied with a final determination... of its fiscal intermediary...as to the amount of total program reimbursement due the provider...for the period covered by such cost report... (2) the amount in controversy is $10,000 or more, and (3) such provider filed its request for a hearing within 180 days..."

42 U.S.C 1395oo (a).  Subsection (d) establishes the power of the board once it has jurisdiction, and provides that:

> A decision by the Board shall be based upon the record made at such hearing, which shall include the evidence considered by the intermediary and such other evidence as may be obtained or received by the Board, and shall be supported by substantial evidence when the record is viewed as a whole. The Board shall have the power to affirm, modify, or reverse a final determination of the fiscal intermediary with respect to a cost report and to make any other revisions on matters covered by such cost report (including revisions adverse to the provider of services) even though such matters were not considered by the intermediary in making such final determination.

*Id.* at § 1395oo(d).  Plaintiff argues it has satisfied the clear conditions of § 1395oo(a) and therefore § 1395oo(d) gives the Board the power to consider the CMEP issue even though it was not first considered by the fiscal intermediary.  The Secretary

disagrees, arguing that the statute is ambiguous, that plaintiff has not met the "dissatisfaction" requirement in subsection (a), and that its reading of the statute is entitled to deference because it is reasonable.  Def.'s Reply at 2.  Both parties argue that *Bethesda Hosp. Ass'n v. Bowen*, 485 U.S. 399 (1988) supports their divergent positions.  *See* Pl.'s Opp'n at 11; Def.'s Reply at 3.

   **B.     *Bethesda Hosp. Ass'n v. Bowen***

      Plaintiff argues that the Supreme Court's decision in *Bethesda Hosp. Ass'n v. Bowen* allows the PRRB to entertain on appeal issues not first raised before the fiscal intermediary in the provider's cost report.  Am. Compl. ¶ 25.  In *Bethesda*, the plaintiff hospitals challenged a 1979 regulation which limited reimbursement for certain malpractice insurance costs.  In their cost reports for 1980, the hospitals followed the 1979 regulation in their apportionment of malpractice insurance costs and thereby effected a "self-disallowance" of malpractice costs in excess of those allowed by the 1979 regulation.  *Id.* at 401.  They later filed a request for a hearing before the PRRB, challenging the validity of the regulation and seeking reimbursement for malpractice costs in accordance with the pre-1979 methodology. Because the amounts had been self-disallowed in the reports filed with the fiscal intermediary, however, the PRRB determined that it did not have jurisdiction to hear the hospitals' claims.  *Id.*

at 401-02.  The Board held that the hospitals could not have been "dissatisfied" with the fiscal intermediary's determination if they had affected a self-disallowance of the amount in question. *Id.* at 402.  The District Court reversed the decision of the Board, holding that it should have entertained the regulatory challenge.  The Court of Appeals for the Sixth Circuit reversed, agreeing that the Board could not exercise jurisdiction over those claims by providers who had self-disallowed reimbursement and had failed to first challenge the regulations in question before the fiscal intermediary.

The Supreme Court granted certiorari to resolve a split between the circuits and reversed, holding that "there is no statute or regulation that expressly mandates that a challenge to the validity of a regulation be submitted first to the fiscal intermediary."  *Id.* at 404.  The Court reasoned that "[p]roviders know that, under the statutory scheme, the fiscal intermediary is confined to the mere application of the Secretary's regulations, and that the intermediary is without power to award reimbursement except as the regulations provide, and that any attempt to persuade the intermediary to do otherwise would be futile."  *Id.* The Court explained that once the Board properly assumes jurisdiction under Sec. 1395oo(a), it has the power to "make any other revisions on matters covered by such cost report...even though such matters were not considered by the intermediary in

making such final determination." *Id*. (quoting Sec. 1395oo(d)).
"This language allows the Board, once it obtains jurisdiction
pursuant to subsection (a), to review and revise a cost report
with respect to matters not contested before the fiscal
intermediary." *Id.*   The Court concluded that the "only
limitation" on the Board's jurisdiction beyond the requirements
enumerated in subsection (a), is that the expense in question
must have been incurred within the period for which the cost
report was filed, "even if such cost or expense was not expressly
claimed." *Id.* at 406.  Plaintiff argues that this case clearly
stands for the proposition that there is no "exhaustion
requirement" imposed by the Medicare statute, and that once an
NPR has been properly appealed, the Board has jurisdiction to
hear all claims pertaining to reimbursement for that year,
whether brought first before the fiscal intermediary or not.

Defendant counters that the *Bethesda* decision stands for the
much narrower proposition that a hospital is not required to make
futile claims before the fiscal intermediary for costs prohibited
by the current regulations.  Def.'s Reply at 11.  The Secretary
argues that under *Bethesda* a provider is still required to claim
all costs to which it would be entitled otherwise.  In support of
this argument, defendant relies on the following dictum from the
*Bethesda* decision.  In describing the regulatory challenge
brought by the petitioners, the Court noted that

9

Petitioners stand on different ground than do providers
who bypass a clearly prescribed exhaustion requirement
or who fail to request from the intermediary
reimbursement for all costs to which they are entitled
under applicable rules.  While such defaults might well
establish that a provider was satisfied with the
amounts requested in its cost report and awarded by the
fiscal intermediary, those circumstances are not
presented here.

*Id.* at 405.  Defendant contends that the instant case is
precisely the one the Supreme Court envisioned in the above
passage.  Plaintiff has not claimed the costs of the CMEP on any
of the relevant cost reports, nor has it indicated that such
costs are barred by a particular regulation such that requesting
such costs would be futile.  In fact, plaintiff is very clear
that it is not making a futility argument, stating in its
opposition brief that "the Hospital has moved for summary
judgment irrespective of whether it would have been futile to
claim the costs." Pl.'s Reply at 17.  Consequently, the Secretary
argues that *Bethesda* does not permit the Board to hear its appeal
of the CMEP issue.

**C.    Post-*Bethesda* Circuit Split**

There is a split among the circuit courts that have
addressed this issue since the *Bethesda* decision.  The Seventh
Circuit has adopted the interpretation of *Bethesda* that the
Secretary puts forth today, which precludes PRRB jurisdiction
where the provider's request would not have been futile.  *Little*

*Company of Mary Hosp. v. Shalala*, 24 F.3d 984 (7th Cir. 1994)
("*Little Co. I*").  Relying on the *Bethesda* dicta, the Court noted
that the "teaching" of that case is that a provider's failure to
claim all the reimbursement it is entitled under program policies
is tantamount to failure to exhaust administrative remedies
before the fiscal intermediary, which establishes that the
provider is not "dissatisfied" with the intermediary's final
reimbursement determination.  *Id.* at 992; *see also Little Company
of Mary Hosp. v. Shalala*, 165 F.3d 1162 (7th Cir. 1999) ("*Little
Co. II*")(holding PRRB lacked jurisdiction to entertain an appeal
over an issue that the fiscal intermediary had not considered).
In *Little Co. II,* the Court again found no jurisdiction, and
distinguished *Bethesda* on the grounds that the cost issue on
appeal did not involve an "issue of policy" like the *Bethesda*
plaintiffs' challenge to the malpractice regulations.  *Id.* at
1065.  In the case at bar, defendant argues that this Court
should adopt the Seventh Circuit's reasoning and hold that
because the CMEP issue does not involve a challenge to a Medicare
regulation or policy, but instead is merely a cost that the
plaintiff did not include in its report, the PRRB lacks
jurisdiction to hear it on appeal.  Def.'s Mot. at 23.

The First and Ninth Circuits, by contrast, have determined
that the language of the Medicare statute provides for Board
jurisdiction over claims not included in the initial cost report,

whether they be inadvertently omitted or "self-disallowed." *See Loma Linda University Medical Center v. Leavitt*, 492 F.3d 1065 (9th Cir. 2007); *MaineGeneral Medical Center v. Shalala*, 205 F.3d 493 (1st Cir. 2000). In both cases, the courts rejected the Seventh Circuit's interpretation based on the plain language of the statute, finding it contained neither an exhaustion requirement before the fiscal intermediary to obtain a hearing, nor a limitation on the Board's scope of review once its jurisdiction was invoked.

### D. Statutory Analysis

Post-*Bethesda*, this Circuit has not specifically addressed the question of whether the PRRB can hear new issues on appeal that were not raised in the initial cost report submitted to the fiscal intermediary.[2] However, this Circuit has thoroughly explored a related jurisdictional issue which will guide the

---

[2] Prior to the Supreme Court's decision in *Bethesda v. Bowen*, the D.C. Circuit definitively held that the PRRB does not have jurisdiction over appeals regarding costs not specifically claimed for reimbursement on a cost report. *Athens Community Hospital v. Schweiker*, 743 F.2d 1 (D.C. Cir. 1984)("*Athens II*"). The *Athens II* Court interpreted the Medicare statute to place the locus of the Board's jurisdiction in § 1395oo(d), and the Board's functions in § 1395oo(a), though this interpretation of the statute would later be implicitly overruled by *Bethesda*, which found the jurisdiction/functions division to be precisely opposite. The D.C. Circuit has since acknowledged that the holding of *Athens II* has been "undercut by *Bethesda*" in so far as the jurisdictional limitations of the PRRB are concerned, *HCA Health Services of Oklahoma, Inc. v. Shalala*, 27 F.3d 614, 621 n.4 (D.C. Cir. 1994), but the Court has not again had occasion to affirmatively rule on the confines of the Board's jurisdiction.

Court's statutory analysis.  In *HCA Health Services of Oklahoma, Inc. v. Shalala*, the Court contrasted the broad scope of the Board's initial review of an NPR available under § 1395oo with the more circumscribed review process of a revised NPR.  A revised NPR or "determination after reopening" occurs only after the original NPR has been issued and the intermediary reopens the cost report pursuant to 42 C.F.R. § 405.1885(a).  These regulations provide that a fiscal intermediary may reopen an NPR within three years of issuance to make certain adjustments to specific cost report items.  *Id*.  An intermediary's substantive revisions to the cost report made upon reopening are reviewable by the Board if such review is requested within 180 days.  *HCA*, 27 F.3d at 619.

In *HCA*, the D.C. Circuit ruled that there is a fundamental, jurisdictional difference between an appeal predicated upon an original NPR and one that is predicated on a revised NPR.  In that case, the intermediary expressed its intention in 1989 to revisit certain specific items in its NPR for fiscal year 1985. The intermediary's decision to reopen was within the three-year limitations period.  The intermediary made several adjustments and the hospital timely appealed those adjustments to the Board. However, the hospital also attempted to add to the appeal the fiscal intermediary's calculation of certain other costs which had been decided in the original 1985 NPR and not revisited

since.  The Board held that its jurisdiction on appeal was
limited to the specific "matters adjusted by the revised NPR for
which the 180-day appeals period had not yet expired."  *Id.* at
616.  The plaintiff sought judicial review.

The district court upheld the Board's interpretation of the
statute, which limited the Board's jurisdiction to only the
specific issues that were the subject of the reopening, and
rejected the hospital's contention that the Board had
jurisdiction over all cost items in the NPR by virtue of the
reopening of certain other cost items.  The D.C. Circuit
affirmed, holding that

> hearing rights before the Board challenging an
> intermediary's decision [on] reopening are issue-
> specific: The separate and distinct determination gives
> a right to a hearing on the matters corrected by such
> determination.  Thus, a revised NPR does not reopen the
> entire cost report to appeal.  It merely opens those
> matters adjusted by the revised NPR.

*Id.* at 622  (internal citations omitted).  In so finding, the
Court determined that the reopening process was a creation of the
regulations, authorized by the Secretary's general rule-making
authority under 42 U.S.C. § § 1302 and 1395hh.  *Id.* at 618.  As
such, the reopening process was not governed by the provisions of
§ 1395oo of the Medicare statute.

The Court explained that the Board's jurisdiction on
reopening did not originate in subsection 1395oo(a), as it does
for *initial* review of an NPR.  Thus, the Court determined that

14

the Board's "expansive power of review" under 1395oo(d) is not applicable to review of reopening decisions because the Board's 1395oo(d) powers only apply once jurisdiction attaches under 1395oo(a). *Id.* at 617, 620.

### 1. 1395oo(a) Requirements for jurisdiction

Unlike the hospital in *HCA*, plaintiff seeks review of an initial NPR, and thus 1395oo(a) governs the Board's jurisdiction. As stated above, a provider may obtain a hearing before the Board with respect to its cost report if

> such provider 1) is dissatisfied with a final determination... of its fiscal intermediary...as to the amount of total program reimbursement due the provider...for the period covered by such cost report... (2) the amount in controversy is $10,000 or more, and (3) such provider filed its request for a hearing within 180 days..."

42 U.S.C 1395oo(a). The parties do not dispute that plaintiff has satisfied the requirements of parts two and three, however defendant contends that plaintiff has not met the "dissatisfaction" requirement of part one because plaintiff necessarily cannot be dissatisfied with an intermediary's determination of costs for which it did not request reimbursement. While the Secretary's argument is not without logic, it is precisely the argument the Supreme Court rejected in *Bethesda* and contrary to the plain language of the statute.

15

Subsection 1395oo(a) clearly states that a provider, such as plaintiff, may obtain a Board hearing with respect to the cost report when it is dissatisfied with the intermediary's final determination of the amount of *total* reimbursement.  "Section 1395oo(a) does not say that a hearing may be obtained ... if a provider 'is dissatisfied with a final determination of its intermediary as to the amount of reimbursement due on each claim'-which the statute would do, in sum or substance, if the Secretary's interpretation were plausible."  *Loma Linda*, 492 F.3d at 1070-71.

In the instant case, plaintiff was clearly "dissatisfied" with the fiscal intermediary's determination of *total* reimbursement for fiscal years 2000-2003 because it appealed multiple issues in each NPR.  Its appeals were on time and the amounts exceeded the jurisdictional minimum.  At that point, the Board had jurisdiction for a hearing, that according to the clear language of the statute, was with respect to the provider's cost reports for the years in question.  *Id*. at 1071.  The Court is not persuaded to interpret the statute to grant a hearing based upon a provider's expressed dissatisfaction with *individual* reimbursement determinations when the plain language clearly predicates the Board's jurisdiction on a provider's

16

dissatisfaction with the "amount of *total* program

reimbursement." 42 U.S.C. 1395oo(a)(1)(A)(I).

### 2.    1395oo (d): The Board's Scope of Review

As noted above, subsection (d) confers upon the Board

> the power to affirm, modify, or reverse a final
> determination of the fiscal intermediary with
> respect to a cost report and to make any other
> revisions on matters covered by such cost
> report...*even though such matters were not
> considered by the intermediary in making such
> final determination.*

*Id.* § 1395oo(d)(emphasis added).  Quoting *Bethesda*, the *HCA*

Court explained,

> [t]his "language allows the Board, once it obtains
> jurisdiction pursuant to subsection (a), to review and
> revise a cost report with respect to matters not
> contested before the fiscal intermediary. The only
> limitation prescribed by Congress is that the matter
> must have been 'covered by such cost report.'" 485 U.S.
> at 406.  In other words, once Board jurisdiction
> pursuant to subsection (a) obtains, anything in the
> original cost report is fair game for a challenge by
> virtue of subsection (d).  Thus were we to conclude
> that appeals to the Board of an intermediary's
> reopening ultimately must rest on § 1395oo(a), the
> Hospital might find solid ground in § 1395oo(d) for
> appealing matters decided in the original NPR but never
> revisited since.

27 F.3d at 617.

Plaintiff seeks review of an initial NPR, and therefore

"anything in the original cost report is fair game for a

challenge by virtue of subsection (d)." *Id.*  As stated in

*Bethesda* and repeated in *HCA*, once jurisdiction under subsection

(a) is properly invoked, the "only limitation prescribed by

17

Congress is that the matter must have been 'covered by such cost report.'" *Id.* (quoting 485 U.S. at 406). This means only that the expense must have "been incurred within the period for which the cost report was filed." *Bethesda*, 485 U.S. at 406. This does not mean, as the Secretary urges, that the matter must have been actually requested in the cost report. Rather, in order for the CMEP expenses to have been "covered" by the plaintiff's cost reports for 2000-2003, they must only have been incurred during each of the relevant cost years. There is no dispute that these costs were incurred during 2000-2003, and therefore plaintiff has satisfied the "only limitation" on the Board's review under subsection (d).

As § 1395oo(a) explicitly requires only dissatisfaction with the *total* amount of program reimbursement in order to obtain a hearing, and § 1395oo(d) allows the Board to consider evidence not put before the intermediary and make modifications based upon that evidence, the Court cannot accept the Secretary's contention that Congress actually intended to impose an issue-specific exhaustion requirement to access administrative appellate review. There is no such limitation on the Board's jurisdiction or upon its power of review once jurisdiction is obtained.

In light of this clear statutory directive, the Court must reject the Secretary's request for deference to its interpretation under *Chevron U.S.A. Inc. v. Natural Resources*

18

*Defense Council, Inc.*, 467 U.S. 837, 843-45 (1984)(holding that courts owe deference to an agency's permissible interpretation of a statute it administers when the statute is silent or ambiguous with respect to the particular issue).  "Where the statute is ambiguous, we defer to the agency's reasonable interpretation of its meaning.  By contrast, a clear expression of congressional intent will bind agency and court alike."  *National Mining Ass'n v. Kempthorne*, 512 F.3d 702, 707 (D.C. Cir. 2008).  As explained above, the Court finds that the language of the Medicare statute is clear and unambiguous: a provider may invoke the Board's jurisdiction under 1395oo(a) by claiming dissatisfaction with the *total* amount of reimbursement determined in an NPR, and the Board has the power under 1395oo(d) to modify the total amount based on evidence not considered by the fiscal intermediary.

**E.   Proceedings on Remand**

Having determined that the Board has jurisdiction over the costs related to the clinical medical education programs for fiscal years 2000-2003, the Court will now address plaintiff's request for an order directing the Board to review and rule upon this issue on the merits.  Pl.'s Mot. at 1.  The Court rejects that request.  The Board concluded that it lacked jurisdiction over the CMEP issue "because the provider failed to request reimbursement for all costs to which it was entitled."  *Id.*, Ex. 4.  The Court has determined that the Medicare statute imposes no

such limitation on the Board's jurisdiction.  The Board must now decide again whether it will hear these claims as a matter of discretion, not statutory jurisdiction.  *See MaineGeneral*, 205 F.3d at 501.  "Congress specifically granted the Board 'full power and authority' to make rules 'necessary or appropriate' to carry out its statutory tasks."  *Id.* (quoting 42 U.S.C. § 1395oo(e)).  Accordingly, the Board may adopt a policy of hearing claims not initially presented to the fiscal intermediary or of refusing to hear them, or it may decide on a case by case basis. *Id.*  This conclusion comports with the plain language of subsection (d), which states the "Board shall have the power to affirm, modify, or reverse a final determination of the fiscal intermediary with respect to a cost report."  Congress empowered the Board to make such modifications and allowed it to consider evidence not put before the fiscal intermediary, but did not require it to do so.  *See Loma Linda*, 492 F.3d at 1073; *MaineGeneral*, 205 F.3d at 501; *St. Luke's Hosp. v. Secretary of Health and Human Servs.*, 810 F.2d 325, 332-33 (1st Cir. 1987)(Breyer, J.).

This conclusion not only flows directly from the statutory language, but addresses many of the policy concerns articulated by the Secretary in his brief and acknowledged by this Circuit in *Athens II,* 743 F.2d at 6-7 (opining that Board jurisdiction over new issues would make the PRRB the tribunal of original

20

jurisdiction, eliminate a tier of review, and potentially slow the reimbursement process for other providers).  If the Board shares these concerns, it may address them pursuant to its rule-making authority.

**III. CONCLUSION**

For the reasons stated above, plaintiff's Motion for Summary Judgment is **GRANTED** and defendant's Motion for Summary Judgment is **DENIED**.  This matter is remanded to the Provider Reimbursement Review Board for proceedings consistent with this opinion.  An appropriate Order accompanies this opinion.


**Signed:     Emmet G. Sullivan**
**             United States District Judge**
**             March 7, 2008**